******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STEROCO, INC. *v.* JOSEPH J. SZYMANSKI, JR., ET AL.
(AC 37288)

DiPentima, C. J., and Lavine and Keller, Js.

*Argued January 12, 2016—officially released June 14, 2016*

(Appeal from Superior Court, judicial district of New Haven, Hon. William L. Hadden, Jr., judge trial referee.)

*E. James Loughlin*, for the appellant (named defendant).

*Dominic Joseph DelVecchio*, for the appellee (plaintiff).

*Opinion*

KELLER, J. The defendant Joseph J. Szymanski, Jr.,[1] appeals from the judgment of the trial court granting a permanent injunction requested by the plaintiff, Steroco, Inc., in its action seeking private enforcement of the zoning regulations of the town of North Branford. On appeal, the defendant claims that this court should vacate the permanent injunction on the basis of the following: (1) the court improperly found that the defendant had committed a zoning violation; (2) the court erred by applying an improper standard in deciding whether to grant the permanent injunction; and (3) the court improperly rejected the defendant's special defense of municipal estoppel. We agree with the defendant on his second claim and reverse the judgment of the trial court.[2]

On July 17, 2014, the court granted the plaintiff a permanent injunction and issued a memorandum of decision wherein it set forth the following facts and procedural history: "The plaintiff is a Connecticut corporation with a place of business in Durham . . . and is the owner of commercial real estate located at 847 Forest Road in North Branford . . . . The [Zoning Board of Appeals for the Town of North Branford (board)] is a municipal board charged with hearing and deciding appeals of decisions made by the [zoning enforcement officer]. [The defendant] is the owner of Village Wine and Spirits, a retail liquor package store presently located at 855 Forest Road in North Branford . . . . The plaintiff constructed 847 [Forest Road] approximately [fifty] years ago and it has been used as a liquor store since its construction. The defendant has been a tenant at 847 [Forest Road], operating Village Wine for over [twenty-five] years until September, 2012, when he relocated the liquor store to premises located at 855 Forest Road, next door to 847 [Forest Road].

"In connection with relocating his retail liquor store, [the defendant] was required to obtain the approval of the Liquor Control Division of the State Department of Consumer Protection [(liquor control division)]. The application to the [liquor control division] required a certificate from the [zoning enforcement officer] that the new location was in compliance with the North Branford Zoning Regulations. [The defendant] obtained the certificate of zoning compliance from the [zoning enforcement officer] on July 17, 2012, and filed the application with the [liquor control division]. However, that application was lost at the [liquor control division] and was never acted upon by the [liquor control division].

"[The defendant] then filed a new removal application, with a new certificate of zoning compliance dated August 14, 2012, with the [liquor control division], which approved the application. The [liquor control division]

accepted the certificate of zoning compliance and did not question its accuracy. The [liquor control division] requires that the applicant for a new retail liquor store post a placard on the property providing notice of the application for a liquor permit. The placard was posted on August 15, 2012, which was the first time the plaintiff became aware that [the defendant] planned to move his retail liquor store from 847 [Forest Road] to 855 [Forest Road].

"On August 22, 2012, the plaintiff contacted [the liquor control division], was advised of the certificate of zoning compliance on file, and that day contacted the [zoning enforcement officer], who confirmed that he had issued a zoning compliance certificate for 855 [Forest Road]. This was the first time that the plaintiff knew of the issuance of the certificate of zoning compliance.

"On September 7, 2012, the plaintiff filed an application with the board, pursuant to § 61.2.1 of the North Branford Zoning Regulations, claiming that the certificate of zoning compliance filed by the [zoning enforcement officer] was in error. Section 54.4.1 of the zoning regulations of North Branford provides that 'No liquor outlet shall be located within 500 feet of any church . . . .' The plaintiff claimed that 855 [Forest Road] was [fewer] than 500 [feet] from a local church.

"On September 13, 2012, the plaintiff filed an amended application with the board which was identical to the September 7, 2012 application except that ten certified copies of a site plan were filed with the September 13, 2012 application. On October 15, 2012, the board found that the application filed by the plaintiff was untimely and refused to hear the application.

\* \* \*

"The second count [is a private enforcement action seeking injunctive relief and it] requests a permanent injunction restraining [the defendant's] operation of his liquor store at 855 [Forest Road] because it violates the zoning regulations. . . .

"The plaintiff claims that the package store at 855 [Forest Road] is within 500 feet of Saint Andrew's Episcopal Church at 1382 Middletown Avenue in North Branford. The 500 [foot] measurement was conducted in accordance with the North Branford Zoning Regulation § 54.2, [which provides that] '[a]ll required distances shall be measured from the nearest corner of any building or premises used as a liquor outlet to the nearest corner of any church.'

"The professional surveyor retained by the plaintiff testified that he used the 'straight line' method and that the distance from the nearest corner of the church to the nearest corner of 855 [Forest Road] was 460.62 feet. The [zoning enforcement officer] testified that when he signed the certificate of zoning compliance, he had not

yet conducted any measurement of the distance from the church to 855 [Forest Road]. It was after the plaintiff discussed the matter with the [zoning enforcement officer] that he made a measurement. The [zoning enforcement officer] then did a measurement using a pavement wheel to travel the way a pedestrian or vehicle would walk or drive from the front door of 855 [Forest Road] to the front door of the church, resulting in a distance of over 500 feet. There was no credible explanation given by the [zoning enforcement officer] as to why he measured the distance between the front doors of 855 [Forest Road] and the church, rather than the distance between the [nearest] corners of the two buildings, as is required in § 54.2.

* * *

"The court finds that the 'straight line' method is to be used in making the measurement in this case to avoid the inconsistent and arbitrary results in the method used by the [zoning enforcement officer]. Using the 'straight line' method, the court finds that the distance from the nearest corner of the 855 [Forest Road] building to the nearest corner of Saint Andrew's Episcopal Church is 415.18 feet, and the distance from the nearest corner of the unit that contains 855 [Forest Road] to the nearest corner of the church is 460.62 feet. Both measurements are [fewer] than the 500 [feet required] in Zoning Regulation § 54.4.1. The retail liquor sales business at 855 [Forest Road] is in violation of the zoning regulation. . . .

"Section 54.4.2 of the North Branford Zoning Regulations provides that '[n]o liquor outlet shall be located less than 1500 feet from an establishment with the same class permit.' The presence of a liquor outlet at 855 [Forest Road] prevents the plaintiff from leasing 847 [Forest Road] as a liquor outlet because 847 [Forest Road] is less than 1500 feet from the business presently operating at 855 [Forest Road]. When the building which includes 847 [Forest Road] was built [fifty] years ago it was designed as a package store and has been operated as a retail liquor store ever since, with [the defendant] as a tenant for [twenty-five] years.

"The unlawful location of the retail liquor store at 855 [Forest Road] prevents the plaintiff from utilizing his property at 847 [Forest Road] for the purpose for which it was built and has been used for [fifty] years. The inability of the plaintiff to use his property for the purpose for which it was originally constructed and used for [fifty] years results in a reduction in the value of 847 [Forest Road]. Until the illegal relocation of [the defendant's] liquor store to 855 [Forest Road] rendered the plaintiff unable to rent to a new liquor store operator, 847 [Forest Road] had no competition in the Northford Center area. That competitive advantage has been taken away by [the defendant's] illegal relocation. . . . The plaintiff has proven that [the defendant] is

operating in violation of the zoning law and that said operation has caused the plaintiff economic harm."

On August 4, 2014, the defendant filed a motion to reargue pursuant to Practice Book § 11-12, claiming that reargument was required because the court improperly failed to balance the equities in granting the plaintiff's permanent injunction. On September 29, 2014, the court denied the defendant's motion and issued an order wherein it stated that "[t]he order of permanent injunction may issue effective October 1, 2014." This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We first address the defendant's claim that the trial court erred by finding that the defendant had committed a zoning violation by relocating his liquor store to 855 Forest Road. We begin our analysis by setting forth the applicable standard of review. Given that this claim requires us to interpret the North Branford Zoning Regulations, we exercise plenary review because such interpretation involves questions of law. *Trumbull Falls, LLC* v. *Planning & Zoning Commission*, 97 Conn. App. 17, 21, 902 A.2d 706, cert. denied, 280 Conn. 923, 908 A.2d 545 (2006). Moreover, "zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . [R]egulations must be interpreted in accordance with the principle that a reasonable and rational result was intended . . . . The process of statutory interpretation involves the determination of the meaning of the statutory language [or . . . the relevant zoning regulation] as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) Id., 21–22.

The defendant claims that the court erred in its conclusion that his liquor store at 855 Forest Road was within 500 feet of Saint Andrew's Episcopal Church and that its location violated the North Branford Zoning Regulations as a result. Specifically, the defendant argues that the court erred in this regard by adopting the straight line method of measuring the distance between the church and the defendant's liquor store, and that it should have adopted a walking or roadway method of measurement, particularly in light of 1986 amendments to the North Branford Zoning Regulations whereby the town amended § 54 by deleting the word "radius" from its text.[3] In opposition, the plaintiff argues that the court properly concluded that the defendant had committed a zoning violation by relocating his liquor store to its new location because the straight line method of measurement is required by Connecticut case law, the walking method is unworkable, and the walking method would lead to arbitrary and unreasonable results. We agree with the plaintiff.

This court previously analyzed the issue of what method should be used to measure distances set forth in legislative and regulatory language when the method is not specified and when more than one construction of the language is possible. Specifically, in *Trumbull Falls, LLC* v. *Planning & Zoning Commission*, supra, 97 Conn. App. 24–25, this court adhered to the principle that when a regulation does not specify a measurement method and more than one construction of the regulation is possible, a reviewing court should adopt the construction that renders the enactment most workable and effective and it should reject the construction that would yield unreasonable results. Accord *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 653, 894 A.2d 285 (2006). Accordingly, this court concluded that the minimum distance between certain development projects as set forth in a zoning regulation should be calculated using the straight line method instead of the walking or roadway method. *Trumbull Falls, LLC* v. *Planning & Zoning Commission*, supra, 24–25. Furthermore, this court drew attention to the problems inherent in the walking method: "Using the [walking] method could involve inconsistencies in its application that could result in impermissibly arbitrary enforcement. For example, is distance measured 'building to building' or property line to property line? Is it measured using the center of the roadway, or the right or left boundary of the roadway? Additionally, a bizarre result could occur if a distance measured using the center of the roadway is less than one mile, but measured on the outside of the roadway, due to a curve, is greater than one mile. As [a federal district court] has noted, adopting a method of measurement other than the straight line method would create uncertainty, generate needless debate and thwart a readily ascertainable distance." Id.[4]

We have reviewed the North Branford zoning regulation at issue in the present case, and we note that it does not specify a particular method to measure distance. Accordingly, pursuant to *Trumbull Falls, LLC* v. *Planning & Zoning Commission*, supra, 97 Conn. App. 25–29, we conclude that the straight line method is the proper method to be used to measure distance. We note, as the trial court did, that the plain language of § 54.4.1 of the North Branford Zoning Regulations (Rev. to 2015) provides that "[n]o liquor outlet shall be located within 500 feet of any church, synagogue, college, school, park or town-owned playground." Furthermore, we note that the zoning regulation pertaining to the measurement of such distance provides that "[a]ll required distances shall be measured from the nearest corner of any building or premises used as a liquor outlet to the nearest corner of any church, synagogue, college, school building, or park or town-owned playground boundary, or to the nearest corner of any building or premises of any other liquor outlet." North

Branford Zoning Regs. (Rev. to 2015) § 54.2. The defendant argues that we can glean legislative intent to apply the walking method instead of the straight line method based upon the fact that the town of North Branford, in 1986, amended § 54 of the zoning regulations by removing the word "radius" from the provisions pertaining to measuring proximity to a liquor store.[5] We are not persuaded.

In *Trumbull Falls, LLC*, this court, relying on appellate authorities from our sister states, observed that a legislative body such as a municipal zoning authority can specify that a certain type of measurement method be used for zoning purposes if it intends to do so. See *Trumbull Falls, LLC* v. *Planning & Zoning Commission*, supra, 97 Conn. App. 27; see also Regs., Conn. State Agencies § 19-13-B51m (b) ("No water supply well permit shall be given by the director of health: (1) To premises used for human occupancy when a community water supply system having at least fifteen service connections or regularly serving at least twenty-five individuals is deemed available if the boundary of the parcel of property in which the premises is on or will be located on is *within two hundred feet, measured along a street, alley or easement,* of the approved water supply . . . ." [Emphasis added.]). In light of this court's observations in *Trumbull Falls, LLC*, and the reasoning of other state appellate courts deciding similar issues, we conclude that the straight line method is the proper measurement method to be applied to the zoning regulation at issue in the present appeal. Therefore, the court did not err in determining that the defendant had violated the zoning regulations by relocating his liquor store to 855 Forest Road.

## II

Next, we address the defendant's claim that the court applied an improper legal standard in granting the plaintiff its requested permanent injunction. We agree with the defendant.

We begin our analysis by identifying the proper standard of review. Given that this claim requires us to determine whether the trial court correctly applied the law, we exercise plenary review. *State* v. *Hill*, 307 Conn. 689, 697 n.6, 59 A.3d 196 (2013); *DiGiovanna* v. *St. George*, 300 Conn. 59, 70, 12 A.3d 900 (2011).

"A party seeking injunctive relief has the burden of alleging and proving irreparable harm and a lack of an adequate remedy at law. . . . The extraordinary nature of injunctive relief requires that the harm complained of is occurring or will occur if the injunction is not granted. Although an absolute certainty is not required, it must appear that there is a substantial probability that but for the issuance of the injunction, the party seeking it will suffer irreparable harm." (Citations omitted; internal quotation marks omitted.) *Tighe* v. *Berlin*,

259 Conn. 83, 87–88, 788 A.2d 40 (2002). Additionally, "[a] decision to grant or deny an injunction *must be compatible with the equities in the case*, which should take into account the gravity and willfulness of the violation, as well as the potential harm to the defendant." (Emphasis added.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 527, 686 A.2d 481 (1996); accord *Gelinas* v. *West Hartford*, 225 Conn. 575, 595–96, 626 A.2d 259 (1993); *Waterbury* v. *Phoenix Soil, LLC*, 128 Conn. App. 619, 627–28, 20 A.3d 1 (2011).

We note that due to the court's failure to apply the proper standard in its determination as to whether the permanent injunction should issue, it improperly failed to determine whether the plaintiff would suffer irreparable harm absent the injunction. The standard that the court evidently applied to the plaintiff—requiring the plaintiff to prove that the defendant had committed a zoning violation and that it had suffered special damages as a result of such violation—is the standard that courts traditionally have applied to a party's ability to bring a private action seeking to enforce a zoning regulation without first exhausting administrative remedies. "[O]ur case law is clear that nearby property owners specifically and materially damaged by the violation of zoning regulations may bring private zoning enforcement actions directly to the Superior Court, without first applying to municipal zoning authorities . . . ." *Reichenbach* v. *Kraska Enterprises, LLC*, 105 Conn. App. 461, 468, 938 A.2d 1238 (2008); accord *Simko* v. *Ervin*, 234 Conn. 498, 504, 661 A.2d 1018 (1995); *Cummings* v. *Tripp*, 204 Conn. 67, 75, 527 A.2d 230 (1987); *Reynolds* v. *Soffer*, 183 Conn. 67, 69–70, 438 A.2d 1163 (1981); *Karls* v. *Alexandra Realty Corp.*, 179 Conn. 390, 401, 426 A.2d 784 (1980); *Blum* v. *Lisbon Leasing Corp.*, 173 Conn. 175, 180, 377 A.2d 280 (1977); *Fitzgerald* v. *Merard Holding Co.*, 106 Conn. 475, 482–83, 138 A. 483 (1927).[6] It is important to note, however, that a plaintiff's demonstration of these elements is not sufficient to *obtain* injunctive relief, but is only sufficient to confer *standing to seek* such relief without first exhausting administrative remedies. Therefore, once the plaintiff in a land use injunction action has demonstrated that it can seek injunctive relief without first exhausting administrative remedies, it then must meet additional requirements to obtain a permanent injunction. See, e.g., *Silitschanu* v. *Groesbeck*, 12 Conn. App. 57, 64–65, 529 A.2d 732 (1987), aff'd, 208 Conn. 312, 543 A.2d 737 (1988); see also *Lavitt* v. *Pierre*, 152 Conn. 66, 76–77, 203 A.2d 289 (1964).

In addition to establishing standing to seek injunctive relief in a private enforcement action, a plaintiff in such an action must establish: "(1) that injury from failure to grant an injunction is imminent; (2) the injury is substantial; (3) the injury is irreparable and there is a substantial probability that unless an injunction is issued the party seeking it will suffer irreparable harm."

R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 41.6, p. 518; accord *Karls* v. *Alexandra Realty Corp.*, supra, 179 Conn. 401–403; *Silitschanu* v. *Groesbeck*, supra, 12 Conn. App. 64–65; see *Koepper* v. *Emanuele*, 164 Conn. 175, 177–78, 319 A.2d 411 (1972) (trial court's refusal to issue injunction was proper where plaintiff failed to provide evidence of irreparable injury).

The trial court, in its memorandum of decision, stated that "[i]n order to obtain injunctive relief from alleged zoning violations, the applicant must establish the existence of such zoning violations and he must also prove that he has suffered special damages caused by the zoning violation." The court iterated its impression of the plaintiff's burden later in its memorandum of decision, stating that "[t]he plaintiff must prove that a zoning violation exists and that the violation has caused him to suffer special damages." The court then proceeded to conduct its analysis of the defendant's relocation of his liquor store to 855 Forest Road by determining whether the plaintiff had established a zoning violation and whether the plaintiff had suffered special damages as a result of the zoning violation. The court, however, failed to indicate expressly or give any indication that it had applied the appropriate standard in rendering its decision granting the plaintiff's requested permanent injunction. Specifically, the court did not analyze whether the plaintiff had established that it would suffer irreparable harm absent a permanent injunction or whether the plaintiff lacked an adequate remedy at law.

The court also gave no indication that it had balanced the equities between the parties in determining whether the permanent injunction should issue. This court previously has observed that "[t]here is a general principle that a court of equity will balance the equities between the parties in determining what, if any, relief to give. The equities on both sides must be taken into account in considering an appeal to a court's equitable powers. An equity court wisely considers the relative positions of the parties and makes a decree that does substantial justice to all. It is the duty of a court of equity to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief. . . . [C]ourts should not intervene unless the need for equitable relief is clear, not remote or speculative. Thus, a court of equity should not grant an award which would be disproportionate in its harm to the defendant and its assistance to the plaintiff." (Internal quotation marks omitted.) *Gager* v. *Gager & Peterson, LLP*, 76 Conn. App. 552, 560 n.9, 820 A.2d 1063 (2003).

In the present case, the record furnishes no indication that the court considered the needs and potential harms suffered by both parties prior to issuing the permanent injunction sought by the plaintiff; rather, it clearly reflects that the court did not do so. Because the record

reveals that the court applied an incorrect legal standard prior to its issuance of the permanent injunction, we reverse the court's judgment and we conclude that this case must be remanded to the court for a new trial at which it should apply the proper standard for the issuance of a permanent injunction as articulated in this opinion.

### III

Finally, we address the defendant's claim that the court improperly rejected his special defense of municipal estoppel. Specifically, the defendant claims that there was evidence in the record which established that on two occasions, the zoning enforcement officer had given him confirmation that his liquor store's location at 855 Forest Road would not be in violation of the North Branford Zoning Regulations. In opposition, the plaintiff argues that the court did not err in rejecting the defendant's municipal estoppel special defense because the evidence established that the defendant had not exercised due diligence in ascertaining whether his liquor store's location at 855 Forest Road was in violation of the North Branford Zoning Regulations.[7] We conclude that the special defense of municipal estoppel is not applicable in this case, and therefore, we need not address the court's analysis of it in this case. "Where the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. . . . We may affirm the court's judgment on a dispositive alternate ground for which there is support in the trial court record. . . . Affirmance on alternate grounds is possible, however, only when the result is required by law." (Citations omitted; internal quotation marks omitted.) *Blacker* v. *Crapo*, 112 Conn. App. 795, 808–809, 964 A.2d 1241, cert. denied, 291 Conn. 915, 970 A.2d 727 (2009).

We begin our analysis with the proper standard of review for this claim. Because this claim challenges the court's legal conclusions concerning the defendant's special defense, we must exercise plenary review. See *Empire Paving, Inc.* v. *Milford*, 57 Conn. App. 261, 265, 747 A.2d 1063 (2000) ("trial court's legal conclusions are subject to plenary review").

The following additional facts are relevant to this claim. In his August 29, 2013 answer to the plaintiff's complaint, the defendant asserted as his first special defense that the plaintiff's private enforcement action was barred by the doctrine of honest error because the defendant "complied with proper procedure in his conduct complained of in the plaintiff's complaint." In its memorandum of decision, the court rejected the defendant's special defense, which it labeled as sounding in municipal estoppel.[8] After setting forth the law on the doctrine of municipal estoppel, the court concluded that the defendant could not invoke the special defense

because he had "failed to prove that he had exercised due diligence" with respect to whether his liquor store's location at 855 Forest Road violated the 500 foot rule set forth in the North Branford Zoning Regulations. The court also concluded that the defendant could not prevail on the municipal estoppel special defense because he failed to prove both that he had lacked knowledge of the fact that his liquor store's location at 855 Forest Road violated North Branford Zoning Regulations and that he did not have the means to discover whether that was the case.

Although the court analyzed what the defendant needed to prove to invoke a municipal estoppel defense and determined that he had failed to prove the necessary elements,[9] the court engaged in that analysis unnecessarily. A municipal estoppel special defense bars only *a municipality* from enforcing its own zoning regulations. In the present case, the defendant has raised his special defense of municipal estoppel in order to bar a *private party*, the plaintiff, from enforcing a municipality's zoning regulations. Our Supreme Court, in *Pascale* v. *Board of Zoning Appeals*, 150 Conn. 113, 186 A.2d 377 (1962), noted the distinction with respect to how municipal estoppel applies only to municipalities and not to private parties. In *Pascale*, the plaintiff, after having been granted a permit from the municipal building inspector, built a multifamily house which had side yards that were noncompliant with municipal zoning regulations. Id., 115–16. Another private property owner, who owned an adjoining lot, appealed to the municipal zoning board and contested the building inspector's decision to grant a permit to the plaintiff on the grounds that the side yards of the plaintiff's building were noncompliant with the regulations. The board sustained the other property owner's appeal and the plaintiff subsequently appealed to the court of common pleas, which overruled the zoning board's decision. Id., 116. On appeal from that judgment, the plaintiff claimed that the other property owner's appeal should not have been sustained because of municipal estoppel. Id., 119. Our Supreme Court rejected the plaintiff's claim, stating: "If we assume, without deciding, that the city could be estopped in the manner claimed, that estoppel could not defeat [the other property owner's] right as an aggrieved property owner to seek and obtain relief from the board." Id.; see 9A R. Fuller, supra, § 41.5, p. 514 ("[e]ven if a municipality is estopped from claiming a zoning violation after a building permit is issued, that does not preclude revocation where another private property owner brings a successful, timely appeal to the zoning board of appeals even if construction occurred based on the permits"). We conclude that the defendant's municipal estoppel defense properly was rejected by the trial court because the special defense was applicable to the defendant only in the context of an enforcement action brought by the

board, not to the defendant in an action brought by another private property owner.

The judgment is reversed and the case is remanded to the trial court for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

[1] In the original complaint, the plaintiff asserted claims against the following defendants: Joseph J. Szymanski, Jr.; Anthony Beccia, the zoning enforcement officer of the town of North Branford; and Bonnie Therrien, acting town manager of the town of North Branford. With respect to Szymanski, the plaintiff sought a temporary and permanent injunction. With respect to the latter two defendants, the plaintiff sought a writ of mandamus. Thereafter, the trial court granted the plaintiff's motion to cite in the Zoning Board of Appeals of the Town of North Branford (board) as a party defendant. On May 20, 2013, the plaintiff withdrew the action against Beccia and Therrien and, in addition to the counts brought against Szymanski, amended its complaint to seek a writ of mandamus against the board. The trial court subsequently denied the plaintiff's request for a writ of mandamus. Because none of the other defendants are parties to this appeal, we refer to Szymanski as the defendant in this opinion.

[2] In this opinion, we conclude that the court properly determined that the defendant had violated the zoning regulations of the town of North Branford, and we further conclude that his municipal estoppel defense did not apply in this case. Because we reverse the judgment of the trial court on a different ground, namely, that it applied the improper standard for whether a permanent injunction should issue, the court, on remand, need not revisit the issues of whether the defendant violated the zoning regulations or whether his municipal estoppel defense has merit. Instead, on remand, the court should hold a new hearing to determine whether, in accordance with the analysis set forth in this opinion, a permanent injunction should issue.

[3] Section 54 of the North Branford Zoning Regulations (Rev. to 2015), entitled "Alcoholic Beverages," provides in relevant part:

"54.1 General: The following regulations shall apply to the location of any business where alcoholic liquor, wine, beer or ale is sold at retail for consumption on or off premises under a permit issued by the Liquor Control Commission of the State of Connecticut, which business is hereinafter referred to as a 'Liquor Outlet.'

"54.2 Measurement: All required distances shall be measured from the nearest corner of any building or premises used as a liquor outlet to the nearest corner of any church, synagogue, college, school building, or park or town-owned playground boundary, or to the nearest corner of any building or premises of any other liquor outlet.

* * *

"54.4 Location:

"54.4.1 No liquor outlet shall be located within 500 feet of any church, synagogue, college, school, park or town-owned playground.

"54.4.2 No liquor outlet shall be located less than 1500 feet from an establishment with the same class permit."

[4] In *Trumbull Falls, LLC*, this court also noted that other courts similarly had concluded that where a statute or regulation provides ambiguous language as to what distance measurement method should be used, the straight line method is preferred. See *Trumbull Falls, LLC* v. *Planning & Zoning Commission*, supra, 97 Conn. App. 25–29; see also *People* v. *Robbins*, 5 N.Y.3d 556, 558–59, 840 N.E.2d 1020, 807 N.Y.S.2d 7 (2005) (rejecting criminal defendant's argument on appeal that distance for purposes of enhancing criminal penalty for sale of illegal drugs when such sale occurred within certain proximity of school area should be calculated by walking method and concluding that uncertainty would be obviated by using straight line method); *Restaurant Row Associates* v. *Horry County*, 335 S.C. 209, 220–21, 516 S.E.2d 442, cert. denied, 528 U.S. 1020, 120 S. Ct. 528, 145 L. Ed. 2d 409 (1999) (concluding that adult entertainment establishment's proximity to residential district, to determine whether establishment's location was violative of zoning ordinance, should have been measured using straight line method, or as crow flies). This court briefly referred to an Indiana appellate decision where the appellate court in that case discussed an issue that was strikingly similar to the issue in the present appeal. See *Taylor Drug Stores, Inc.* v. *Indiana Alcoholic Beverage Commission*, 497 N.E.2d 932, 936 (Ind. Ct. App. 1986) (concluding that distance for purposes of liquor store's prox-

imity to church should be measured using straight line method). Most notably, the Indiana Court of Appeals stated the following: "In interpreting the appropriate means of measurement, we are guided by the terms within the statute. A statute may specify the precise terminal points to be used in a measurement, but in the absence of an express provision, the general rule is that measurement should be along the shortest straight line connecting a church and the proposed premises, regardless of intervening obstacles." Id.

[5] Specifically, prior to the 1986 amendment, § 54 of the North Branford Zoning Regulations (Rev. to 1985) provided the following:

"54.1 General: All uses for on premises and off premises consumption of any Alcoholic Beverage shall be located no closer than 500 [feet] in radius from any church, synagogue, college, school, park or playground.

"54.1.1 All required distances shall be measured from the nearest corner of any building or premises used for sale of Alcoholic Beverages.

"54.1.2 Location of establishments with existing permits may move once up to 500 [feet] within the 1000 [feet] radius required from their previously permitted business premises.

"54.2 Location of on premises consumption of Alcoholic Beverages other than Restaurant Beer permit shall be located not less than 1000 feet in radius from any other such business.

"54.2.1 Location of on premises consumption for Restaurant Beer permit shall be located not less than 1000 feet in radius from any other such business."

[6] We observe that in the more recent cases cited for this principle, our Supreme Court has stated that a plaintiff must prove that it has been "specifically and materially damaged" by the defendant's conduct in order to have standing to bring a private action to enforce a zoning regulation without exhausting administrative remedies. See *Simko* v. *Ervin*, supra 234 Conn. 504; *Cummings* v. *Tripp*, supra, 204 Conn. 75; *Reynolds* v. *Soffer*, supra, 183 Conn. 69–70; *Karls* v. *Alexandra Realty Corp.*, supra, 179 Conn. 401. In the older cases, specifically, *Blum* and *Fitzgerald*, our Supreme Court stated that a plaintiff must show that it has suffered "special damages" in order to have standing to seek private enforcement of a zoning regulation without exhausting administrative remedies. See *Blum* v. *Lisbon Leasing Corp., Inc.*, supra, 173 Conn. 180; *Fitzgerald* v. *Merard Holding Co.*, supra, 106 Conn. 482–83. Nevertheless, this court, in *Miskimen* v. *Biber*, 85 Conn. App. 615, 617 n.3, 858 A.2d 806 (2004), cert. denied, 272 Conn. 916, 866 A.2d 1287 (2005), articulated the standard by using both phrases: "Although the primary responsibility for enforcing zoning regulations rests with the zoning commission, when a violation results in *special damage* to an individual, the injured party has a right to seek relief. . . . The requirement of *special damages* serves to differentiate individuals *specifically and materially damaged* by a zoning ordinance violation from members of the general public who do not have standing." (Citation omitted; emphasis added.)

[7] The plaintiff also contends that the evidence established that the defendant went about seeking administrative approval for his liquor store's relocation in a manner that suggested that he knew that his liquor store's new location was in violation of the North Branford Zoning Regulations.

[8] As the trial court did in its memorandum of decision, we note that the special defense that the defendant pleaded, the doctrine of honest error, is more commonly viewed as a subcategory of municipal estoppel, and we shall refer to the defendant's special defense as one sounding in municipal estoppel for purposes of this opinion. See 9A R. Fuller, supra, § 41.5, p. 511 ("[o]ne of three situations may exist [with respect to municipal estoppel]: . . . (3) when the municipal official in good faith and within the scope of his duties makes an erroneous and debatable interpretation of the ordinance and the property owner in good faith relies upon it, there is estoppel against later revocation of the permit; this is called the doctrine of honest error").

[9] "[I]n order for a court to invoke municipal estoppel, the aggrieved party must establish that: (1) an authorized agent of the municipality had done or said something calculated or intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts; and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents." (Internal quotation marks omitted.) *Cortese* v. *Planning & Zoning Board of Appeals*, 274 Conn. 411, 418, 876 A.2d 540 (2005); *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 247, 662 A.2d 1179 (1995).