******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## CECILIA PFISTER ET AL. *v.* MADISON BEACH HOTEL, LLC ET AL.
## (AC 41792)

Alvord, Moll and Bishop, Js.

*Syllabus*

The plaintiffs, residents of the town of Madison, brought an action seeking, inter alia, a permanent injunction prohibiting the defendant H Co., a hotel in Madison, and the defendant hotel property owner from hosting public outdoor summer concerts. H Co. has been in operation since before the adoption of the Madison zoning regulations in 1953 and, therefore, its operation as a hotel and a restaurant was grandfathered as a nonconforming preexisting use in a residential zone. In 2012, H Co. began sponsoring a free public summer concert series on a strip of land located immediately adjacent to the hotel property. This strip of land is part of a town park, which has existed since 1896, and was also grandfathered as a preexisting nonconforming use in a residential zone. The concert series consists of one concert per week and was scheduled, organized, and funded by H Co., which obtained the requisite permits from the town to host the concerts. During the concerts, H Co. sold food and beverages from its property to both hotel guests and concert attendees. Since 2012, there have been numerous complaints by nearby residents regarding the noise and traffic created by the concert series. The plaintiffs thereafter brought the present action, claiming that the defendants violated Madison zoning regulations by hosting the summer concert series on the town park, thereby illegally extending and expanding nonpreexisting, nonconforming uses of the hotel property. On appeal, the defendants claimed that the trial court erred in concluding that the zoning restrictions applicable to H Co., which would prohibit it from hosting such concerts on its own property, also applied to H Co.'s ability to host a concert series on town park property. *Held*:

1. The trial court erred in concluding that H Co.'s use of the town park to host a public concert series violated the permissible uses of the park under the Madison zoning regulations because the court improperly considered the restrictions applicable to the hotel property in evaluating the legality of H Co.'s use of the town park; H Co.'s permitted use of the town park did not grant H Co. a possessory interest in the park, and H Co.'s use of its own resources to support and sponsor a free concert series, despite the commercial nature of such use, did not transform the park into part of H Co.'s property or expand H Co.'s use of the town park impermissibly, and there was no prohibition on commercial events on town property in the Madison zoning regulations.

2. The plaintiffs could not prevail on their claim that the only permissible uses of the town park are those that can be shown to have historically occurred prior to the adoption of the zoning regulations in 1953 and, therefore, because there was no evidence of concerts having occurred in the park, their occurrence improperly expanded the nonconforming use status applicable to the park; the property's classification as a park as a whole, and not merely the actual prior uses of the park, was what was grandfathered into the zoning scheme and, therefore, permissible uses of the park included all passive and recreational activities permitted in any park in Madison, the use of the park to host a free public concert series was within the bounds of the park's nonconforming use, as the town's definition of a park has no enumerated list of permissible activities, and the park has been used continuously as a park since 1896.

Argued November 21, 2019—officially released May 12, 2020

*Procedural History*

Action seeking, inter alia, a permanent injunction, and other relief, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Ecker, J.*; judgment for the named plaintiff et al., from

which the named defendant et al. appealed to this court. *Reversed*; *judgment directed*.

*Damian K. Gunningsmith*, with whom were *David S. Hardy* and, on the brief, *Drew J. Cunningham*, for the appellants (named defendant et al.).

*Scott T. Garosshen*, with whom, on the brief, was *Karen L. Dowd*, for the appellees (named plaintiff et al.).

*Opinion*

BISHOP, J. The defendants Madison Beach Hotel, LLC, and Madison Beach Hotel of Florida, LLC, appeal from the trial court's judgment granting a permanent injunction in favor of the plaintiffs Cecilia Pfister, Margaret P. Carbajal, Katherine Spence, Emile J. Geisenheimer, Susan F. Geisenheimer, Henry L. Platt, Douglas J. Crowley, and 33 MBW, LLC.[1] Specifically, the defendants claim that the trial court erred in holding that their use of a town owned parcel of land to host public concerts violates the zoning regulations of the town of Madison. We agree with the defendants and, accordingly, we reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. Madison Beach Hotel, LLC, is the owner of the Madison Beach Hotel (hotel) and the real property on which the hotel is situated, 86 and 88 West Wharf Road in Madison (hotel property). Madison Beach Hotel of Florida, LLC, is the operating entity for the hotel. The hotel sits in an R-5 zone.[2] The hotel property has existed in Madison, albeit under different management, since before the adoption of the town's zoning regulatory scheme on April 10, 1953. Accordingly, the hotel's operation as a hotel and restaurant, which otherwise is not a permitted use in the residential zone in which it sits, was grandfathered as a preexisting nonconforming use.[3]

In 2006, Madison Beach Hotel, LLC, purchased the hotel property and, thereafter, the hotel began operating as it exists today. Prior to this change in ownership, previous owners of the hotel property had received approval for a number of individual variances pertinent to the property to allow for, among other things, the hotel restaurant to operate year-round instead of just seasonally, and for renovations to expand the hotel size, to reduce the number of guest rooms, and to raise the roof. In 2008, in order to address enforcement difficulties created by the numerous piecemeal variances that, at that time, were still applicable to the hotel property, the hotel applied for what it called a "comprehensive variance," which it claimed would, thereafter, be the sole authority governing the legal uses of the hotel property.

After a public hearing, the Madison Zoning Board of Appeals (board) approved the hotel's variance application. The terms of this variance, as approved by the board, both expanded and reduced nonconformities that existed on the hotel property.[4] Furthermore, the variance placed "additional conditions and modifications" on the hotel's operation and use of the hotel property. For example, the variance limited amplification of outdoor music played on the hotel property by prohibiting any amplification louder than that which can be plainly heard within fifty feet of the hotel

property.

In 2012, the hotel began sponsoring a summer concert series, known as the Grassy Strip Summer Concert Series (concert series), which consisted of one concert per week for approximately ten weeks each summer, with each concert lasting from 7 p.m. until approximately 9:30 p.m. In sponsoring the concert series, the hotel would schedule, organize, fund, and host the concerts on a strip of land located immediately adjacent to the hotel, known as the Grassy Strip. The Grassy Strip is part of a town owned parcel of land called West Wharf Beach Park. Since 1896, the Grassy Strip and West Wharf Beach Park have been owned exclusively by the town and have been used as a park since prior to the enactment of the Madison zoning regulations. Like the hotel, the park is located in a residential zone and is not considered a permitted use under the zoning regulations. Therefore, similar to the hotel property, the park was grandfathered into the Madison zoning scheme as a preexisting nonconforming use in an R-4 district.[5]

The Grassy Strip is available for recreational use by any taxpaying citizen of Madison who files the appropriate facilities request form and pays the corresponding fees.[6] The evidence adduced at trial reveals that, each summer, the hotel obtains the requisite permits from the town and pays the requisite fees in order to hold the concerts on the Grassy Strip. The hotel secures the town's showmobile,[7] uses its own electricity, hires and pays the bands, reimburses the town for providing police officers to direct traffic, and advertises the concert series to the public. Although the concerts take place on the Grassy Strip, the hotel also utilizes portable bars located on the porches of the hotel to serve beverages, and the hotel restaurant is open for business during the concerts. Accordingly, patrons who attend the concerts often travel back and forth between the hotel property and the Grassy Strip during the concert to buy food and beverages, and many attendees choose to watch the concert from the hotel's balconies and railings. Although attendance at the concerts has been estimated to average around 200 patrons per show, the evidence revealed that, for at least one of the concerts held in 2017, attendance reached close to 1000 attendees.

Since 2012, there have been a number of complaints regarding the noise and the traffic created by the concert series, which the town and the hotel have worked together to alleviate. On June 19, 2015, the plaintiffs filed a complaint in the trial court against the defendants, alleging, among other things, that the defendants had violated § 12.3 of the zoning regulations of Madison by hosting outdoor concerts and, therefore, illegally extending and expanding nonpreexisting nonconforming uses of the hotel property.[8] The defendants dis-

agreed, arguing that the use restrictions imposed on the hotel property have no impact on their activities on the Grassy Strip. After a bench trial, the court rendered judgment for the plaintiffs, granting their request for a permanent injunction that prohibits the defendants from "organizing, producing, promoting, or sponsoring the Grassy [Strip] Summer Concert Series . . . ."[9] This appeal followed.

The defendants claim on appeal that the court erred in (1) determining that their use of the Grassy Strip violated the Madison zoning regulations, and (2) relying on *Crabtree Realty Co.* v. *Planning & Zoning Commission*, 82 Conn. App. 559, 845 A.2d 447, cert. denied, 269 Conn. 911, 852 A.2d 739 (2004), to support that determination. With regard to their first claim, the defendants argue that the trial court erred in concluding that the use restrictions applicable to the hotel property are also binding on the actions taken by the hotel on the Grassy Strip.[10] We agree with the defendants that the use restrictions that bind the hotel property, including the 2008 variance and any remaining nonconforming use,[11] are irrelevant here, as they do not apply to the activities permitted to be held by the defendants on the Grassy Strip. We also agree with the defendants' second claim that *Crabtree Realty Co.* is inapplicable in the present case. Because these two claims are intertwined, we address them together.[12]

We first set forth the relevant legal principles in reviewing a court's decision to grant a request for a permanent injunction. "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 566, 775 A.2d 284 (2001).

Given that the defendants' claim requires us to interpret the Madison zoning regulations, "we exercise plenary review because such interpretation involves questions of law. . . . Moreover, zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . [R]egulations must be interpreted in accordance with the principle that a reasonable and rational result was intended . . . . The process of statutory interpretation involves the determination of the meaning of the statutory language [or . . . the relevant zoning regulation] as applied to the facts of the case, including the question of whether the language does so apply." (Citation omitted; internal quotation marks omitted.) *Steroco, Inc.* v. *Szymanski*, 166 Conn. App. 75, 82, 140 A.3d 1014 (2016).

The essence of the defendants' argument is that the court's ruling—that the restrictions applicable to the hotel property also apply to their activities on the Grassy Strip—violates a basic principle of land use law. "It is well established that the zoning power can be exercised only to regulate land use and is not concerned with ownership." *Lord Family of Windsor, LLC* v. *Planning & Zoning Commission*, 288 Conn. 730, 740, 954 A.2d 831 (2008); see also *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 857, 670 A.2d 1271 (1996) ("zoning power may only be used to regulate the use, not the user of the land" (internal quotation marks omitted)); *Verrillo* v. *Zoning Board of Appeals*, 155 Conn. App. 657, 680, 111 A.3d 473 (2015) ("[z]oning is concerned with the use of property and not primarily with its ownership" (internal quotation marks omitted)). Accordingly, the defendants argue that the court erred when it employed an analysis that considers the permissible uses of both properties together in order to determine if the actual use of one parcel would violate the restrictions imposed on the other parcel. Instead, the defendants claim that the correct analysis for a court to use in evaluating whether a violation has occurred is as follows: "(1) [W]hat is the parcel at issue where plaintiffs claim zoning violations are occurring, i.e., the parcel being used?" "(2) [W]hat are the permissible uses of the parcel at issue under the law?" "(3) [I]s the parcel at issue being used for a permissible use under the law? If the third question is answered in the affirmative, there is no zoning violation." The defendants posit that *Thomas* v. *Planning & Zoning Commission*, 98 Conn. App. 742, 911 A.2d 1129 (2006), is factually on point with the present case and supports their proposed analytical framework. We disagree that *Thomas* is sufficiently factually analogous as to dictate a clear line of interpretation for us to follow.[13] In the absence of factually analogous case law to the contrary, and in conjunction with traditional notions of land use law, however, we agree that the defendants' analysis in looking only to the rules applicable to the particular parcel at issue is proper.

In proposing this analysis, the defendants explicitly reject the court's application of *Crabtree Realty Co.* v. *Planning & Zoning Commission*, supra, 82 Conn. App. 559, which held that, under the circumstances present in that case, the court could look beyond parcel borders to determine the legality of the use at issue. We conclude that *Crabtree Realty Co.* is inapplicable in the present case because the relationship between the landowners and the parcels on which they seek to take action is materially different.

In *Crabtree Realty Co.*, a defendant landowner sought to construct a parking lot on a vacant parcel of land adjacent to his own property, which he was leasing for that purpose. Id., 563. The defendant's own property,

an auto dealership, was a preexisting nonconforming use within the zoning district in which it was located. Id. The defendant landowner filed a site plan application with the local planning and zoning commission, seeking approval to construct the parking lot on the leased parcel of land. Id., 561–62. The commission denied the request on the ground that his proposal would enlarge his property's preexisting nonconforming use in violation of the local zoning regulations. Id., 562. On appeal, the Superior Court affirmed the decision of the commission, and the landowner thereafter appealed to this court. Id., 561. In turn, this court affirmed the Superior Court's decision, holding that the landowner's proposed use of the leased parcel to add parking spots for the nonconforming business it operated on its own parcel would constitute an illegal expansion of the preexisting nonconforming use. Id., 565–66.

In the present case, the plaintiffs argue that the court did not err in concluding that the hotel's actions on the Grassy Strip violate restrictions placed on the hotel property via the Madison zoning regulations. In its decision, the court here applied *Crabtree Realty Co.* as a controlling authority. In applying *Crabtree Realty Co.*, the court determined that, because the hotel would be expanding its nonconforming use if it were to host the concerts on its own property, it should not be allowed to avoid that violation simply by hosting the concerts on the adjacent Grassy Strip. It is undisputed, however, that the Grassy Strip still is, and has been, owned and operated as a park by the town of Madison since 1896. In reaching its conclusion, the court considered the facts that the hotel pays for and supplies electricity, as well as produces, organizes, and benefits from the concert series as evidence that the hotel has annexed the Grassy Strip to its own property for purposes of assessing its use of the land. We note, however, that the court cited no authority, aside from *Crabtree Realty Co.*, to support this analysis. For the reasons we outline, we conclude that *Crabtree Realty Co.* is inapposite.

*Crabtree Realty Co.* is readily distinguishable from the present case because the second parcel in *Crabtree Realty Co.* was a vacant lot of private property that was exclusively leased by the owner of the first parcel. The court in *Crabtree Realty Co.* stated that the commission in that case was "entitled to deny the plaintiff's application because the proposed use of [the vacant second parcel] would have *added new land* to the plaintiff's nonconforming use of [its own property]." (Emphasis added.) Id., 564. The court in *Crabtree Realty Co.* also stated that the trial court properly upheld the commission's determination that the use would result in an illegal expansion of a nonconforming use because "the proposed use of [the vacant second parcel] would result in a *physical change* of the *property under the plaintiff's control* . . . ." (Emphasis added.) Id., 565.

In the present case, the second parcel at issue, the Grassy Strip, is not a vacant private lot leased by the defendants for future use but, instead, is a public tract of land operating as a park and owned by the town.[14] Although the hotel has received permits to use the Grassy Strip, these licenses granted to the hotel by the Madison Beach and Recreation Department do not grant the hotel the same possessory interest in the Grassy Strip as the lease in *Crabtree Realty Co.* granted to that landowner.[15] "A lease is a contract under which an exclusive possessory interest in property is conveyed." *Clean Corp.* v. *Foston*, 33 Conn. App. 197, 201, 634 A.2d 1200 (1993). A "license [however] in real property is a mere privilege to act on the land of another, which does not produce an interest in the property." Id., 203. Therefore, *Crabtree Realty Co.* is factually distinguishable from the present case because of the differences in control over the parcels at issue in each case.

Additionally, unlike *Crabtree Realty Co.*, the hotel's use of the Grassy Strip to host a public concert once a week does not constitute a physical change of the hotel's own property in the way that adding a parking lot for use by patrons of the auto dealership would have altered the property in *Crabtree Realty Co.* Although we agree that, in the particular factual scenario at issue in *Crabtree Realty Co.*, the commission was correct in determining that permitting the construction of a parking lot would constitute an illegal expansion of the auto dealer's nonconforming use, we disagree with the court in the present case that the facts of *Crabtree Realty Co.* are parallel to those that we confront in this matter. Contrary to the conclusion of the court, the hotel's use of its own resources to support and sponsor a free concert series does not transform the Grassy Strip into part of the hotel's property, nor does it expand the hotel's use of its own property impermissibly. Accordingly, we do not agree with the court's reliance on *Crabtree Realty Co.*

The defendants also challenge the court's consideration of the nature of their use of the Grassy Strip in determining whether the zoning regulations were violated. The court stated that, because the hotel's use of the property is "commercial" in nature, the hotel has effectively executed an end run around the restrictions limiting the business it may conduct on its property and, therefore, it has violated the zoning regulations. We agree with the defendants that the court's reliance on the alleged "commercial nature" of the concert series was incorrect.

The fact that the hotel stands to benefit, financially or otherwise, from the concerts held on the Grassy Strip has no bearing on the legal determination regarding the permissible uses of the Grassy Strip by a Madison citizen under the zoning regulations. The court states in its memorandum of decision that, "[w]ith each concert

. . . the hotel also generates goodwill, and draws to its doorstep hundreds of potential future customers for the hotel's lodging, banquet, and other services. Whatever other interests may be served by the concert series (promoting town spirit, supporting arts and entertainment, and so forth), the event is plainly a commercial activity, which generates direct and indirect economic benefits for the hotel as a business enterprise." The court then goes on to say that, with the commerciality of the concerts in mind, the activity is clearly illegal because it undeniably exceeds the nonconforming use limitations on the hotel property under § 12.3 of the Madison zoning regulations. As noted previously in this opinion, we disagree with the court's focus on the restrictions applicable to the hotel property, as we do not think such an analysis is germane to the pivotal issue presented for adjudication.

The court additionally states, albeit in dicta,[16] that the commercial nature of the concerts creates an illegal nonconformity on the Grassy Strip. Notably, there is no prohibition of commercial events on town property codified anywhere in the Madison zoning regulations.[17] The court's determination, however, is not rooted in the permissible uses of a town owned park under the zoning regulations; rather, the court explains that, even if other Madison citizens would be permitted to hold a musical performance on the Grassy Strip, the hotel cannot do so "in a manner that temporarily annexes the town's property to extend [its own] (nonconforming) commercial activities using the town's land." The court's emphasis on the commercial nature of the defendants' events, however, serves only to prevent a specific citizen, the hotel, from using a town owned space in a manner available to other citizens.

On the basis of the foregoing, we agree with the defendants that the court erred in considering the restrictions applicable to the hotel property when evaluating the legality of the hotel's use of the Grassy Strip. In its memorandum of decision, the court cites no basis, either in the zoning regulations or in precedent, to justify disregarding the use-user distinction that serves as a cornerstone of land use law. Accordingly, we conclude that the proper inquiry for determining the legality of a use of a parcel of land is that set forth by the defendants: (1) What is the parcel being used? (2) What are the permissible uses of the parcel at issue under the law? (3) Is the parcel at issue being used for a permissible use under the law? This analytical framework properly focuses on the use of the parcel in question and not on the identity of the user of the parcel. In order to conduct this analysis on appeal, we must first determine the permissible uses of West Wharf Beach Park.

As is previously discussed in this opinion, the parcel on which the subject use is occurring is the Grassy Strip. The Grassy Strip is located in a parcel classified

as a park, which the Madison zoning regulations ordinarily do not permit in residential zones. Accordingly, the Grassy Strip, as part of West Wharf Beach Park, was grandfathered into the zoning regulations as a pre-existing nonconforming use *as a park*. The plaintiffs assert, and the trial court agreed, that the only permitted uses of the grandfathered Grassy Strip are those uses of the Grassy Strip that can be shown to have historically occurred prior to the adoption of the zoning regulations in 1953, and not the uses permitted in parks generally. The defendants, however, argue that, because West Wharf Beach Park was grandfathered into the zoning scheme *as a park*, the available uses of the park are not limited to merely those activities that have actually happened in West Wharf Beach Park prior to the zoning regulations, but instead include all of the permitted uses of a park under the Madison zoning regulations. We agree with the defendants.

"A nonconforming use is merely an existing use the continuance of which is authorized by the zoning regulations. . . . To be a nonconforming use the use must be actual. It is not enough that it be a contemplated use nor that the property was bought for the particular use. The property must be so utilized as to be irrevocably committed to that use. . . . [T]o be irrevocably committed to a particular use, there must have been a significant amount of preliminary or preparatory work done on the property prior to the enactment of the zoning regulations which unequivocally indicates that the property was going to be used for that particular purpose." (Citations omitted; internal quotation marks omitted.) *Wing* v. *Zoning Board of Appeals*, 61 Conn. App. 639, 644–45, 767 A.2d 131, cert. denied, 256 Conn. 908, 772 A.2d 602 (2001).

The plaintiffs argue that, because there is no evidence of concerts having ever occurred on the Grassy Strip, their occurrence improperly expands the nonconforming use status applicable to the park. As is established by our case law, however, the "actual use" requirement for qualifying as a nonconforming use refers to the use of the parcel *as a whole* in the manner intended to be grandfathered. We repeat for clarity that West Wharf Beach Park, including the Grassy Strip, has been a town owned parcel of land continuously *used as a park* since 1896, and that the zoning regulations were enacted in 1953. Accordingly, the property had been continuously and actually used as a park for more than fifty years prior to the adoption of the zoning regulations and, therefore, had undoubtedly been irrevocably committed to its particular use as a park. It makes no difference whether a particular recreational use—in this case, concerts—has occurred in this particular park before, because Madison's definition of a "park" has no enumerated list of permissible activities.[18] The Madison zoning regulations define a park only as "a tract of land reserved for active or passive recreational purposes

and open to the public." Madison Zoning Regs., § 19. Because the West Wharf Beach Park has been *reserved for active and passive recreational purposes and open to the public* since prior to 1953, the use of the park to host a free public concert series is well within the bounds of the park's nonconforming use. The property's classification as a park, and not merely the actual prior uses of the park, is what was grandfathered into the zoning scheme.

Therefore, in applying the analytical framework appropriate here, we determine that (1) the land being utilized is the Grassy Strip, which is a part of the long-standing West Wharf Beach Park (2) the permissible uses of West Wharf Beach Park include all of those passive and active recreational activities permitted in parks in Madison, regardless of whether they have ever taken place in West Wharf Beach Park before, and (3) the recreational Grassy Strip Concert Series—a free, passive recreational activity—constitutes a permitted use of the Grassy Strip in West Wharf Beach Park. In viewing the use of the Grassy Strip for the concert series through the analysis proposed by the defendants, we conclude that the hotel's use of the Grassy Strip does not violate the permissible uses of a park under the zoning regulations in the manner asserted by the plaintiffs on appeal. Accordingly, we reverse the judgment of the court to the extent that it determined that the defendants' use of the Grassy Strip to host the concert series violated the Madison zoning regulations.

The judgment is reversed and the case is remanded with direction to deny the plaintiffs' request for a permanent injunction.

In this opinion the other judges concurred.

[1] The town of Madison was a named defendant in the present action but the trial court dismissed the plaintiffs' claim against it for failure to exhaust administrative remedies. The plaintiffs have not cross appealed from that ruling, and the town of Madison is not otherwise participating in this appeal. We refer to Madison Beach Hotel, LLC, and Madison Beach Hotel of Florida, LLC, by name or as the defendants for purposes of this appeal.

Additionally, Schutt Realty, LLC, was a named plaintiff in the present action, but it subsequently withdrew its claims. Accordingly, we refer to Cecilia Pfister, Margaret P. Carbajal, Katherine Spence, Emile J. Geisenheimer, Susan F. Geisenheimer, Henry L. Platt, Douglas J. Crowley, and 33 MBW, LLC, as the plaintiffs for purposes of this appeal.

[2] An R-5 district is a residential zoning district established by the Madison zoning regulations. The purpose of all residential zoning districts, according to the zoning regulations, is to "set aside and protect areas to be used primarily for single family dwellings. It is intended that all uses permitted [in residential districts] be compatible with single family development . . . ." Madison Zoning Regs., § 3.1.

[3] Under the Madison zoning regulations, a nonconforming use is defined as "a [u]se of land, [b]uilding or [p]remises which is not a [u]se permitted by these [r]egulations for the district in which such land, [b]uilding or [p]remises is situated." Madison Zoning Regs., § 19. The zoning regulations also specify that "[a]ny non-conforming use or building lawfully existing at the time of the adoption of these regulations . . . may be continued . . . subject to the following regulations . . . No non-conforming use shall be extended or expanded." Id., §§ 12 and 12.3.

[4] The variance certificate states in relevant part: "The proposal would provide zoning-related benefits in that it would reduce nonconformities relating to coverage and to setbacks . . . reduce the number of hotel guest

rooms and restaurant/lounge/bar seats, and remove unauthorized encroach-ments onto [t]own property. . . . Approval of the proposal as presented, and as modified by the conditions established herein, would provide a comprehensive means to defining and controlling the existing commercial use in a residential neighborhood."

[5] As of 1974, parks were a permitted use of property in residential zones under the Madison zoning regulations. Since that time, the zoning code has been revised to add the requirement that, in order to establish a park in a residential zone, the land owner must obtain a special exception. Because West Wharf Beach Park existed in the R-4 zone prior to the special exception requirement, it was grandfathered into this requirement.

[6] The Madison zoning regulations define a park as "a tract of land reserved for active or passive recreational purposes and open to the public." Madison Zoning Regs., § 19.

The Beach and Recreation Commission is in charge of issuing permits for use of the town owned West Wharf Beach Park. The Administrative Procedures for the Use of Recreation Facilities states: "Taxpaying Madison residents and [Madison] business owners (not employees of) are eligible to utilize the [town's recreation facilities, of which West Wharf Park is one]. Permission for the use of all Beach and Recreation Department facilities must be obtained from the Beach and Recreation Director . . . . All requests are to be submitted in writing on a 'Facility Request Form' with a live signature . . . by a Madison resident." Rental fees and deposits are also required.

[7] In its memorandum of decision, the court found that "[t]he showmobile is a long rectangular trailer with retractable panels. It can be transformed hydraulically into an attractive, functional, open sided stage. The show-mobile used by the hotel for the Grassy Strip Summer Concert Series was purchased by the town in 2015. The hotel pays the town a rental fee for use of the showmobile on concert nights."

[8] Section 12.3 of the Madison zoning regulations provides that "[n]o non-conforming use shall be extended or expanded."

[9] The court's memorandum of decision additionally denied all other injunc-tive relief sought in the plaintiffs' operative complaint and dismissed the plaintiffs' claim for a declaratory judgment as to the enforceability of the variance with regard to certain hotel operations and functions.

[10] The defendants also argue in support of their first claim that (1) even if the 2008 variance were applicable to its use of the Grassy Strip, the Madison zoning regulations still were not violated by the use, and (2) the trial court exceeded its jurisdiction by determining that the activities occurring on the hotel property were not permitted under the terms of the variance. Because we find in favor of the defendants on other grounds, we decline to address these additional arguments.

[11] We offer no opinion as to the defendants' claim that the approval of the 2008 variance by the board eliminated, as a matter of law, any remaining nonconforming use of the property.

[12] The defendants raise as a third claim on appeal that the court's perma-nent injunction prohibiting them from organizing, producing, promoting, or sponsoring the concert series constitutes a violation of their rights under the first and fourteenth amendments to the United States constitution. Pursu-ant to the canon of constitutional avoidance, we decline to reach the merits of this claim. "[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory con-struction or general law, the [c]ourt will decide only the latter." *Ashwander* v. *Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S. Ct. 466, 80 L. Ed. 688 (1936) (Brandeis, J., concurring); see also *State* v. *Graham S.*, 149 Conn. App. 334, 343, 87 A.3d 1182, cert. denied, 312 Conn. 912, 93 A.3d 595 (2014). Because we are able to resolve this matter on the basis of the text of the Madison zoning regulations and general principles of land use law, we decline to reach the merits of the defendants' constitutional claim on appeal.

[13] In *Thomas*, an abutting neighbor brought an action against a local planning and zoning commission for approving a site application filed by a landowner to construct a parking lot in the rear of the landowner's property. *Thomas* v. *Planning & Zoning Commission*, supra, 98 Conn. App. 744–45. The property itself was a nonconforming use within its residentially zoned district. Id., 744. The plaintiff neighbor argued that the commission was permitting the illegal expansion of the landowner's nonconforming use by allowing the parking lot to be constructed. Id. The court affirmed the commis-sion and held that the expansion of the parking lot did not expand the nonconforming use because the applicant was merely modifying an existing

parking lot, and parking lots are a permitted use in that district. Id., 744–45. The defendants in the present case cite *Thomas* in support of the notion that the regulation limiting expansion of nonconforming uses does not apply to uses that are consistent with the zoning code.

With respect to *Thomas*, we agree that the import of its holding is closer to the issue presented to us today than that of *Crabtree Realty Co.*, which we discuss later in this opinion. In *Thomas*, the court held that the regulation governing the illegality of expanding nonconformities was inapplicable to an alteration on a property that constitutes a permitted use with the zoning code. *Thomas* v. *Planning & Zoning Commission*, supra, 98 Conn. App. 751. However, because *Thomas* involved the building of a parking lot on the *same* parcel of land as that owned by the landowner, we acknowledge that the application of *Thomas* in this instance is limited. To the extent that *Thomas* recognizes that developments consistent with the zoning code are, by their nature, not nonconformities, we agree. However, in the present case, the concerts are not held on the hotel property but, instead, are held on the Grassy Strip. Therefore, *Thomas* can be factually distinguished.

[14] From June 13, 2012 to June 13, 2013, the defendants had a reciprocal license agreement with the town during which time the town licensed the Grassy Strip property to the hotel. Throughout the trial court proceedings in this case, this agreement was referred to as a "lease." The agreement, however, functioned as a license, and did not convey actual ownership of the Grassy Strip to the hotel. "[A] license in real property is a mere privilege to act on the land of another, which does not produce an interest in the property. . . . [It] does not convey a possessory interest in land . . . ." (Internal quotation marks omitted.) *Murphy, Inc.* v. *Remodeling, Etc., Inc.*, 62 Conn. App. 517, 522, 772 A.2d 154, cert. denied, 256 Conn. 916, 773 A.2d 945 (2001). The agreement between the hotel and the town was for a term of one year and did not terminate the town's ongoing ownership of the Grassy Strip. In fact, the agreement itself expressly stated that the town retained ownership in the land, and merely granted exclusive rights of use to the hotel for a set term. The agreement terminated in 2013 and, accordingly, is no longer operative.

[15] We acknowledge that, since 1979, the hotel has retained exclusive responsibility for the landscaping and maintenance of the Grassy Strip. This has included cutting the grass and managing its overall appearance. This maintenance responsibility is the result of an agreement with the town.

[16] The court's assertion that the hotel's use of the Grassy Strip violates the nonconforming use *of the park* is only discussed briefly in the memorandum of decision. The court writes: "Due to the commercial nature of the concerts as they are produced by the hotel, this activity also violates the Madison zoning regulations applicable to West Wharf Park, because commercial activities of this nature are not a permitted use in an R-4 zone, park or no park." The court's statement is not supported by any case law, regulation, or legal analysis, and we therefore conclude that this language is mere dictum.

[17] Within the Madison Administrative Procedures for the Use of Recreation Facilities, which are not a part of the zoning regulations, it states that "Madison facilities cannot be used for individual or corporate personal enterprise where admission fees are charged or where selling a product/service *is the purpose of the gathering* . . . ." (Emphasis added.) As the undisputed record reflects, no admission fees were charged for entry to the concerts, and the defendants' stated purpose for the concert series was to provide a form of free recreational entertainment to the public on the Grassy Strip.

[18] In addition, the evidence at trial revealed that other parks in town, including Salt Meadow Park, have had musical outdoor events hosted by citizens and organizations. These parks, too, exist in residential zones.