******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CECILIA PFISTER ET AL. *v.* MADISON
BEACH HOTEL, LLC, ET AL.
(SC 20478)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Kahn and Keller, Js.

*Syllabus*

The plaintiffs sought a permanent injunction precluding the defendant owner
and defendant operator of a hotel located in a residential zone in the
town of Madison, from hosting a series of free, weekly outdoor concerts
on a grassy strip of land in a town park that is immediately adjacent to
the hotel property. The hotel predates the enactment of the Madison
zoning regulations, and, therefore, its operation was grandfathered and
is permitted as a preexisting, nonconforming use in the residential zone.
In addition, because the park existed in the residential zone prior to a
1979 revision to the town zoning regulations that requires a landowner
to obtain a special exception to establish a park in a residential zone,
it was grandfathered and is permitted as a preexisting, nonconforming
use. The hotel scheduled, organized, and funded the concerts, and
obtained the requisite permits from the town to host them. The plaintiffs
alleged, inter alia, that the defendants, by hosting the concerts, had
violated the town zoning regulations because the use of the park for
concerts was an illegal expansion of the hotel's preexisting, nonconform-
ing use of the hotel property. The trial court, relying on *Crabtree Realty
Co.* v. *Planning & Zoning Commission* (82 Conn. App. 559), granted
the plaintiffs' request for a permanent injunction. The trial court rea-
soned that, because the hotel could not host the concerts on the hotel
property without illegally expanding that property's nonconforming use,
it could not host the concerts on the grassy strip in the park without
also violating the use restrictions applicable to the hotel property. The
defendants appealed to the Appellate Court, which reversed the trial
court's judgment, concluding, inter alia, that the trial court had improp-
erly considered the restrictions applicable to the hotel property in evalu-
ating the legality of the hotel's use of the grassy strip to host the concerts.
The Appellate Court determined that the permitted uses of the grassy
strip included all of the permitted uses of a park under the applicable
zoning regulations, including free outdoor concerts. On the granting of
certification, the plaintiffs appealed to this court. *Held*:

1. The plaintiffs could not prevail on their claim that the Appellate Court
   had improperly applied plenary review to the trial court's determination
   that the hotel's use of the grassy strip of land in the park illegally
   expanded the hotel's nonconforming use of the hotel property: the trial
   court's determination was predicated on the application of an incorrect
   legal standard, as *Crabtree Realty Co.* was not persuasive authority,
   and, even if it were, it did not support the trial court's determination,
   which ostensibly was based on a theory that the defendants' hosting of
   the concerts, in contributing to the hotel's business, annexed the grassy
   strip to the hotel; accordingly, because the trial court's factual findings
   were predicated on a misapprehension of the law, the court did not
   make the requisite findings necessary to conclude that the hosting of
   the concerts on the grassy strip violated the town zoning regulations, and
   the court's decision to grant the permanent injunction could not stand.

2. There was no merit to the plaintiffs' claims that the Appellate Court
   misapplied the actual use doctrine in concluding that the concerts were
   a permitted use of the park and that the defendants were required to
   prove that the park was actually used for concerts prior to the enactment
   of the special exception requirement in 1979; the Appellate Court cor-
   rectly determined that the park was irrevocably and actually committed
   to its use as a park prior to the 1979 enactment of the special exception
   requirement and that the defendants' use of the park to host free concerts
   was within the bounds of the permissible uses of the park, as defined
   in the town zoning regulations.

3. The plaintiffs could not prevail on their claim that the Appellate Court
   incorrectly concluded that the concerts were permitted under the town

zoning regulation that limits the use of parks to active and passive recreational activities insofar as the trial court unequivocally found that the concerts, although free, were commercial rather than recreational in nature: the commercial nature of the concerts was irrelevant to the legal determination regarding the permissible uses of the park, and the trial court's focus on that issue was misguided; moreover, the trial court's analysis improperly made the permissibility of hosting a concert in the park turn on the subjective intent of the host, in violation of the zoning principle that zoning may be used only to regulate the use of land, not the user.

Argued February 22, 2021—officially released January 5, 2022*

*Procedural History*

Action seeking, inter alia, a permanent injunction prohibiting the named defendant et al. from hosting a certain concert series, and for other relief, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Ecker, J.*; judgment for the named plaintiff et al., from which the named defendant et al. appealed to the Appellate Court, *Alvord, Moll* and *Bishop, Js.*, which reversed the trial court's judgment and remanded the case with direction to deny the plaintiffs' request for a permanent injunction, and the named plaintiff et al., on the granting of certification, appealed to this court. *Affirmed*.

*Scott T. Garosshen*, with whom was *Karen L. Dowd*, for the appellants (named plaintiff et al.).

*Damian K. Gunningsmith*, with whom were *David S. Hardy* and, on the brief, *Drew J. Cunningham*, for the appellees (named defendant et al.).

*Opinion*

KELLER, J. The plaintiffs Cecilia Pfister, Margaret P. Carbajal, Katherine Spence, Emile J. Geisenheimer, Susan F. Geisenheimer, Henry L. Platt, Douglas J. Crowley, and 33 MBW, LLC,[1] appeal from the judgment of the Appellate Court reversing the judgment of the trial court, which granted the plaintiffs' request for a permanent injunction prohibiting the defendants Madison Beach Hotel, LLC, and Madison Beach Hotel of Florida, LLC,[2] from hosting a summer concert series at a public park adjacent to the Madison Beach Hotel (hotel). The plaintiffs claim that the Appellate Court incorrectly concluded that the trial court had abused its discretion in granting the injunction because the concerts do not violate the Madison zoning regulations. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "Madison Beach Hotel, LLC, is the owner of the [hotel] and the real property on which the hotel is situated, 86 and 88 West Wharf Road in Madison (hotel property). Madison Beach Hotel of Florida, LLC, is the operating entity for the hotel. The hotel sits in an R-5 [district].[3] The hotel property has existed in Madison, albeit under different management, since before the adoption of the town's zoning regulatory scheme on April 10, 1953. Accordingly, the hotel's operation as a hotel and restaurant, which otherwise is not a permitted use in the residential zone in which it sits, was grandfathered as a preexisting nonconforming use.[4]

"In 2006, Madison Beach Hotel, LLC, purchased the hotel property and, thereafter, the hotel began operating as it exists today. Prior to this change in ownership, previous owners of the hotel property had received approval for a number of individual variances pertinent to the property to allow for, among other things, the hotel restaurant to operate year-round instead of . . . seasonally, and for renovations to expand the hotel size, to reduce the number of guest rooms, and to raise the roof. In 2008, in order to address enforcement difficulties created by the numerous piecemeal variances that, at that time, were still applicable to the hotel property, the hotel applied for what it called a 'comprehensive variance,' which it claimed would, thereafter, be the sole authority governing the legal uses of the hotel property.

"After a public hearing, the Madison Zoning Board of Appeals (board) approved the hotel's variance application. The terms of this variance, as approved by the board, both expanded and reduced nonconformities that existed on the hotel property.[5] Furthermore, the variance placed 'additional conditions and modifications' on the hotel's operation and use of the hotel

property. For example, the variance limited amplification of outdoor music played on the hotel property by prohibiting any amplification louder than that which can be plainly heard within fifty feet of the hotel property.

"In 2012, the hotel began sponsoring a summer concert series, known as the Grassy Strip Summer Concert Series (concert series), which consisted of one concert per week for approximately ten weeks each summer, with each concert lasting from 7 p.m. until approximately 9:30 p.m. In sponsoring the concert series, the hotel would schedule, organize, fund, and host the concerts on a strip of land located immediately adjacent to the hotel, known as the 'Grassy Strip.' The Grassy Strip is part of a town owned parcel of land called West Wharf Beach Park. Since 1896, the Grassy Strip and West Wharf Beach Park have been owned exclusively by the town and have been used as a park since prior to the enactment of the Madison zoning regulations. Like the hotel, the park is located in a residential zone . . . ." (Footnotes in original.) *Pfister* v. *Madison Beach Hotel, LLC*, 197 Conn. App. 326, 328–30, 232 A.3d 52 (2020). "As of 1974, parks were a permitted use of property in residential zones under the Madison zoning regulations. [In 1979], the zoning code [was] revised to add the requirement that, in order to establish a park in a residential zone, the land owner must obtain a special exception.[6] Because West Wharf Beach Park existed in the [residential] zone prior to the special exception requirement, it was grandfathered into this requirement [as a preexisting nonconforming use]." (Footnote added.) Id., 330 n.5. Despite the special exception requirement, it remains a permitted use within the zone. See Madison Zoning Regs., §§ 3.11 and 4.1.

"The Grassy Strip is available for recreational use by any taxpaying citizen of Madison who files the appropriate facilities request form and pays the corresponding fees.[7] The evidence adduced at trial reveals that, each summer, the hotel obtains the requisite permits from the town and pays the requisite fees in order to hold the concerts on the Grassy Strip. The hotel secures the town's showmobile,[8] uses its own electricity, hires and pays the bands, reimburses the town for providing police officers to direct traffic, and advertises the concert series to the public. Although the concerts take place on the Grassy Strip, the hotel also utilizes portable bars located on the porches of the hotel to serve beverages, and the hotel restaurant is open for business during the concerts. Accordingly, patrons who attend the concerts often travel back and forth between the hotel property and the Grassy Strip during the concert to buy food and beverages, and many attendees choose to watch the concert from the hotel's balconies and railings. Although attendance at the concerts has been estimated to average around 200 patrons per show, the evidence revealed that, for at least one of the concerts

held in 2017, attendance reached close to 1000 attendees.

"Since 2012, there have been a number of complaints regarding the noise and the traffic created by the concert series, which the town and the hotel have worked together to alleviate. On June 19, 2015, the plaintiffs filed a complaint in the trial court against the defendants, alleging, among other things, that the defendants had violated § 12.3 of the [Madison] [Z]oning [R]egulations . . . by hosting outdoor concerts and, therefore, illegally extending and expanding nonpreexisting, nonconforming uses of the hotel property.[9] The defendants disagreed, arguing that the use restrictions imposed on the hotel property have no impact on their activities on the Grassy Strip. After a bench trial, the [trial] court rendered judgment [in favor of] the plaintiffs, granting their request for a permanent injunction that prohibits the defendants from organizing, producing, promoting, or sponsoring the . . . [c]oncert [s]eries . . . . "[10] (Footnotes in original; internal quotation marks omitted.) *Pfister* v. *Madison Beach Hotel, LLC*, supra, 197 Conn. App. 331–32.

In so doing, the trial court reasoned that, because the hotel could not host the concert series on the hotel property without illegally expanding that property's nonconforming use, it could not host the concert series on the Grassy Strip without also violating the use restrictions applicable to the hotel. Specifically, the court stated: "Once the concert series is seen for what it is—an activity produced by the hotel as part of its business operations—the legal analysis is relatively straightforward. The activity is illegal because it goes far beyond the preexisting, nonconforming use [of the hotel property] permitted under [§] 12.3 of the Madison Zoning Regulations . . . . The fact that the hotel has made arrangements . . . to locate the musical performance . . . on an adjacent property does not change the undeniable reality that the concert series substantially extends and expands the hotel's nonconforming use of [the hotel] property. Physically and operationally, the concerts are an integral component of the business activity at the hotel in virtually every respect. . . . In the same way that the hotel could not evade the illegality by purchasing or leasing the Grassy Strip from the town to hold concerts, it also cannot temporarily lease or license [it] for the purpose, and with the effect, of enlarging its business operations; an annexation of adjacent land that enlarges the hotel's nonconforming use is illegal in the absence of a variance or zone change." (Citation omitted.) The trial court cited *Crabtree Realty Co.* v. *Planning & Zoning Commission*, 82 Conn. App. 559, 845 A.2d 447, cert. denied, 269 Conn. 911, 852 A.2d 739 (2004), as legal support for the theory that the hotel's use of the Grassy Strip effectively annexed that property to the hotel, thus permitting the trial court to treat the two properties as one for purposes of its

analysis.

On appeal to the Appellate Court, the defendants claimed that the trial court incorrectly concluded that (1) "the use restrictions applicable to the hotel property are also binding on the actions taken by the hotel on the Grassy Strip," and (2) *Crabtree Realty Co.* supported that determination.[11] *Pfister* v. *Madison Beach Hotel, LLC*, supra, 197 Conn. App. 332–33. The Appellate Court agreed with both claims. See id., 333. Applying plenary review to the trial court's decision to grant the permanent injunction, the Appellate Court explained that the decision violated a fundamental tenet of land use law, namely, that "zoning power may only be used to regulate the use, not the user of the land . . . ." (Citation omitted; internal quotation marks omitted.) Id., 334, quoting *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 857, 670 A.2d 1271 (1996). Specifically, the Appellate Court stated that the trial court "erred in considering the restrictions applicable to the hotel property when evaluating the legality of the hotel's use of the Grassy Strip. In its memorandum of decision, the [trial] court cites no basis, either in the [Madison] zoning regulations or in precedent, to justify disregarding the use-user distinction that serves as a cornerstone of land use law." *Pfister* v. *Madison Beach Hotel, LLC*, supra, 341.

The Appellate Court further stated that "the proper inquiry for determining the legality of a use of a parcel of land is that set forth by the defendants: (1) What is the parcel being used? (2) What are the permissible uses of the parcel at issue under the law? (3) Is the parcel at issue being used for a permissible use under the law?" Id. Applying this analytical framework, the Appellate Court determined that the parcel being used was the Grassy Strip and that the permitted uses of that parcel include all of the permitted uses of a park under the Madison zoning regulations, including free outdoor concerts. Id., 343.

In reaching its determination, the Appellate Court rejected the plaintiffs' contention that *Crabtree Realty Co.* permitted the court to treat the Grassy Strip as hotel controlled property for purposes of determining whether the hotel's use of the park unlawfully expanded the hotel's nonconforming use of the hotel property. Id., 336–37. The Appellate Court explained that "*Crabtree Realty Co.* is readily distinguishable from the present case because the second parcel in *Crabtree Realty Co.* was a vacant lot of private property that was exclusively leased by the owner of the first parcel. The court in *Crabtree Realty Co.* stated that the [planning and zoning] commission in that case was entitled to deny the plaintiff's [site plan] application because the proposed use of [the vacant second parcel] would have added new land to the plaintiff's nonconforming use of [its own parcel]. . . . The court in *Crabtree Realty Co.* also

stated that the trial court properly upheld the [planning and zoning] commission's determination that the use would result in an illegal expansion of a nonconforming use because the proposed use of [the vacant second parcel] would result in a physical change of the property under the plaintiff's control . . . .

"In the present case, the second parcel at issue, the Grassy Strip, is not a vacant private lot leased [or otherwise controlled] by the defendants for future use but, instead, is a public tract of land operating as a park and owned by the town.[12] Although the hotel has received permits to use the Grassy Strip, these licenses granted to the hotel by the Madison Beach and Recreation Department do not grant the hotel the same possessory interest in the Grassy Strip as the lease in *Crabtree Realty Co.* granted to that landowner." (Citations omitted; emphasis omitted; footnote in original; internal quotation marks omitted.) Id., 337–38. The Appellate Court additionally explained that, "[c]ontrary to the conclusion of the [trial] court, the hotel's use of its own resources to support and sponsor a free concert series does not transform the Grassy Strip into part of the [hotel] property; nor does it expand the hotel's use of [the hotel] property impermissibly." Id., 339.

Lastly, the Appellate Court rejected the plaintiffs' contention that, "because there is no evidence of concerts having ever occurred on the Grassy Strip, their occurrence improperly expands the nonconforming use status applicable to the park." Id., 342. The court explained that "the 'actual use' requirement for qualifying as a nonconforming use refers to the use of the parcel as a whole in the manner intended to be grandfathered"; (emphasis omitted) id.; and that it is undisputed that the West Wharf Beach Park was intended to be used, and actually was used, as a park at the time of the change in the Madison zoning regulations, resulting in its nonconformity. Id., 342–43. The court further stated: "It makes no difference whether a particular recreational use—in this case, concerts—has occurred in this particular park before, because [the] definition of a 'park' [in the Madison zoning regulations] has no enumerated list of permissible activities. The Madison zoning regulations define a park only as 'a tract of land reserved for active or passive recreational purposes and open to the public.' Madison Zoning Regs., § 19. Because the West Wharf Beach Park has been reserved for active and passive recreational purposes and open to the public since prior to 1953, the use of the park to host a free public concert series is well within the bounds of the park's nonconforming use. The property's classification as a park, and not merely the actual prior uses of the park, is what was grandfathered into the zoning scheme." (Emphasis omitted; footnote omitted.) *Pfister* v. *Madison Beach Hotel, LLC*, supra, 197 Conn. App. 343.

This court granted the plaintiffs' petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court properly apply plenary review to the trial court's judgment?" (2) "Did the Appellate Court properly apply the 'actual use' doctrine in relation to the nonconforming use at issue in this case?" And (3) "[d]id the Appellate Court correctly conclude that a zoning regulation that limits use of a park to 'recreational purposes' allowed the concerts at issue in this case to occur?" *Pfister* v. *Madison Beach Hotel, LLC*, 335 Conn. 923, 923–24, 233 A.3d 1090 (2020). We answer each question in the affirmative.

I

We begin with the plaintiffs' claim that the Appellate Court improperly applied plenary review to the trial court's finding that the hotel's use of the Grassy Strip illegally expanded the hotel's nonconforming use of the hotel property. The plaintiffs argue, inter alia, that the trial court's determination as to whether an illegal expansion of a nonconforming use has occurred is a question of fact reviewable only for clear error. The plaintiffs further argue that the Appellate Court compounded its error by applying plenary review to the trial court's finding regarding on which property the illegal activity occurred. Finally, the plaintiffs argue that the Appellate Court incorrectly determined that *Crabtree Realty Co.* does not support the trial court's decision to treat the Grassy Strip as hotel property for purposes of determining whether the hotel violated the nonconforming use restrictions applicable to the hotel. The plaintiffs argue, contrary to the determination of the Appellate Court, that *Crabtree Realty Co.* "held that . . . a trier of fact may consider the combined effects of activities on two lots when deciding if a new activity illegally expands a nonconforming use [on one of the lots]."

The defendants respond that the Appellate Court properly applied plenary review to the trial court's determination that the hotel's use of the Grassy Strip constituted an illegal expansion of the hotel's nonconformity because that determination was predicated on an erroneous view of the law, namely, that *Crabtree Realty Co.* supported treating the Grassy Strip as an extension of the hotel property for purposes of its analysis. The defendants maintain that whether the trial court applied the correct legal standard is a quintessential question of law subject to de novo review. The defendants further maintain that, to the extent that this court disagrees with the Appellate Court that *Crabtree Realty Co.* is not controlling, this court should overrule *Crabtree Realty Co.* because (1) "there is and was no support for the 'combined effects' analysis" employed therein, (2) a more recent decision of the Appellate Court, *Thomas* v. *Planning & Zoning Commission*, 98 Conn. App. 742, 911 A.2d 1129 (2006), rejected that very

analysis, (3) sister state courts uniformly reject that analysis, and (4) *Crabtree Realty Co.* "is contrary to the principle that zoning power is concerned with uses not users of land, and it creates substantial uncertainty in zoning law."

The following legal principles guide our analysis of the plaintiffs' claim. "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion." (Internal quotation marks omitted.) *Wallingford* v. *Werbiski*, 274 Conn. 483, 494, 877 A.2d 749 (2005).

"Determining the appropriate standard of review is a question of law, and as a result, it is subject to plenary review." *Crews* v. *Crews*, 295 Conn. 153, 161, 989 A.2d 1060 (2010). We thus exercise plenary review of the Appellate Court's determination to apply a plenary standard of review to the trial court's decision in the present case. It is axiomatic that whether the trial court applied an incorrect legal standard in deciding whether the hotel's concert series violated the Madison zoning regulations is also a question of law subject to this court's plenary review. See, e.g., *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 96–97, 801 A.2d 759 (2002).

In concluding that the hotel illegally had expanded the nonconforming use of the hotel property, the trial court cited just one case, *Crabtree Realty Co.*, which it determined stood for the proposition that it properly could consider the use restrictions applicable to the hotel in determining whether the hotel's use of the Grassy Strip violated those restrictions, ostensibly under a theory that the concert series, in boosting the business of the hotel, annexed the Grassy Strip to the hotel. The plaintiffs similarly rely on *Crabtree Realty Co.* for this proposition, citing no other case. We conclude that *Crabtree Realty Co.* is not persuasive authority and that, even if it were, we agree with the Appellate Court that it does not support the trial court's determination. Because the trial court's factual findings were predicated on a misapprehension of the law, it did not make the requisite findings necessary to conclude that the concert series violated the Madison zoning regulations.[13] Accordingly, the trial court's decision to grant the permanent injunction cannot stand. See, e.g., *Francis* v. *Fonfara*, 303 Conn. 292, 301, 33 A.3d 185 (2012) ("misapplication of the law . . . constitutes an abuse of discretion"); *Milford Paintball, LLC* v. *Wampus Milford Associates, LLC*, 117 Conn. App. 86, 92, 978 A.2d 118 (2009) (remanding case for new trial when trial court's findings were dependent on erroneous view of

the law).

In *Crabtree Realty Co.*, an automobile dealership leased an adjacent parcel of land for the purpose of constructing twenty additional parking spaces for its customers and employees. *Crabtree Realty Co.* v. *Planning & Zoning Commission*, supra, 82 Conn. App. 561. Both properties—the dealership property and the adjacent parcel—were located in a general business district in which off-street parking was a permitted use, but an automobile dealership was not. Id., 563. The defendant planning and zoning commission denied the dealership's site plan application on the ground that "construction of parking spaces on adjoining property would enlarge rather than intensify [the dealership's] existing nonconforming use of its own property." Id., 562. After the trial court affirmed the planning and zoning commission's decision, the dealership appealed to the Appellate Court, claiming that, under *Zachs* v. *Zoning Board of Appeals*, 218 Conn. 324, 589 A.2d 351 (1991),[14] the planning and zoning commission incorrectly had determined that the proposed parking lot constituted an illegal expansion rather than a permissible intensification of the dealership's nonconforming use of the dealership property.[15] *Crabtree Realty Co.* v. *Planning & Zoning Commission*, supra, 82 Conn. App. 561–63. Acknowledging that "the case law governing expansion of nonconforming uses is not entirely consistent"; id., 564; the court concluded that "this inconsistency can best be addressed by heeding the oft-repeated observation that [t]he legality of an extension of a nonconforming use is essentially a question of fact. . . .

"From this vantage point, [this court agreed] with the trial court that the [planning and zoning] commission was entitled to deny the [dealership's] application because the proposed use of [the adjacent parcel] would have added new land to the [dealership's] nonconforming use of [its own property]." (Citations omitted; internal quotation marks omitted.) Id. The court further reasoned that, "[b]ecause the proposed use of [the adjacent parcel] would result in a physical change of the property under the [dealership's] control, the [planning and zoning] commission reasonably could decide that granting the [dealership's] proposed use of [of the adjacent parcel] would result in the illegal expansion of its preexisting nonconforming use." Id., 565–66.

In reaching its decision, the court in *Crabtree Realty Co.* relied on a line of cases in which it was held that the addition of new property to a nonconforming property expanded the existing nonconformity. See id., 564. In the present case, however, as the Appellate Court explained, under no reasonable construction of the law can it be said that the hotel's periodic use of the Grassy Strip, under a permit granted to it by the town,[16] added to the hotel property within the meaning of those cases.[17] See *Pfister* v. *Madison Beach Hotel, LLC*, supra,

197 Conn. App. 338–39; see also, e.g., *Clean Corp.* v. *Foston,* 33 Conn. App. 197, 203, 634 A.2d 1200 (1993) ("[u]nlike a lease, a license in real property is a mere privilege to act on the land of another, which does not produce an interest in the property"). Accordingly, we find no merit in the plaintiffs' contention that *Crabtree Realty Co.* "dealt with the precise issue here" and "held that, as part of the factual *Zachs* test, a trier of fact may consider the combined effects of activities on two lots when deciding if a new activity illegally expands a nonconforming use [on one of the lots]." The court in *Crabtree Realty Co.* held no such thing. In deciding whether the planning and zoning commission properly had determined that the new parking lot illegally expanded the dealership's nonconforming use of its own property, the Appellate Court accepted the planning and zoning commission's finding that the newly leased lot added to the property under the dealership's control and, on the basis of that finding, concluded that the planning and zoning commission reasonably could have found that the proposed parking lot would illegally expand the nonconforming use of that property. See *Crabtree Realty Co.* v. *Planning & Zoning Commission,* supra, 82 Conn. App. 564 ("we agree with the trial court that the [planning and zoning] commission was entitled to deny the [dealership's site plan] application because the proposed use of [the adjacent parcel] *would have added new land to the* [*dealership's*] *nonconforming use*" (emphasis added)); id., 565–66. ("[b]ecause the proposed use of [the adjacent parcel] *would result in a physical change of the property under the* [*dealership's*] *control,* the [planning and zoning] commission reasonably could decide that granting the [dealership's] proposed use of [the adjacent parcel] would result in the illegal expansion of its preexisting nonconforming use" (emphasis added)).

Even if *Crabtree Realty Co.* were factually similar, however, it is not persuasive authority. As the defendants argue, the dealership's sole contention in *Crabtree Realty Co.* was that the planning and zoning commission incorrectly determined, *as a factual matter,* that the proposed parking lot constituted an illegal expansion rather than a permissible intensification of the nonconforming dealership property.[18] See id., 562. As a result, the Appellate Court was not required to—nor did it— consider whether the planning and zoning commission had the legal authority to deny a site plan application for a permitted use (parking) merely because it would be used in connection with a nonconforming use. Two years later, however, in *Thomas* v. *Planning & Zoning Commission*, supra, 98 Conn. App. 748–51, the Appellate Court squarely addressed that question and concluded that a planning and zoning commission could not deny a permit for a permitted use on the ground that the permit was sought in connection with a nonconforming use.

The facts of *Thomas* are nearly identical to those of *Crabtree Realty Co.* In *Thomas*, a manufacturing company operating as a nonconforming business in a residential zoning district applied for permission to construct twenty parking spaces behind its manufacturing plant. Id., 744. An abutting landowner opposed the application on the ground that the proposed additional parking on the manufacturer's property would constitute an illegal expansion of the company's nonconforming use of that property, even though off-street parking was a permitted use in the district. Id. Specifically, the landowner argued that, "because the parking lot is used in connection with a nonconforming manufacturing use on the property, the use of the parking lot itself is nonconforming." Id., 748. After the defendant planning and zoning commission approved the application, the landowner appealed to the trial court, which dismissed the appeal. Id., 744. The Appellate Court subsequently affirmed the trial court's judgment, concluding that the planning and zoning commission properly had approved the application because the proposed parking lot was a permitted use within the district. Id., 751; see id., 750 ("The [landowner's] argument fails for a number of reasons. . . . [T]he existing parking lot conforms to the town's [zoning] regulations; it is not a nonconforming use. The expansion of the existing parking lot is not an expansion of a nonconforming use and, consequently, [the applicable zoning regulation, which prohibits the expansion of nonconforming uses], does not apply."); see also *Pfister* v. *Madison Beach Hotel, LLC*, supra, 197 Conn. App. 335 n.13 ("[i]n *Thomas*, the court held that the [zoning] regulation governing the illegality of expanding nonconformities was inapplicable to an alteration on a property that constitutes a permitted use within the zoning code").

We are persuaded by the reasoning in *Thomas*, which accords with several bedrock principles of land use law, including that "[a] permitted use is not a nonconforming use"; *Melody* v. *Zoning Board of Appeals*, 158 Conn. 516, 519, 264 A.2d 572 (1969); "[z]oning is concerned with the use of specific existing buildings and lots, and not primarily with their ownership"; *Abbadessa* v. *Board of Zoning Appeals*, 134 Conn. 28, 32, 54 A.2d 675 (1947); and "[t]he designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." *Beit Havurah* v. *Zoning Board of Appeals*, 177 Conn. 440, 443, 418 A.2d 82 (1979); see also R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 52:1, p. 220 ("[t]he prohibition of expansion of nonconforming uses applies only to the aspect of the use or structure which is nonconforming"). We also agree with the Appellate Court that "the import of [*Thomas'*] holding

is closer to the issue presented to us . . . than that of *Crabtree Realty Co.*"; *Pfister* v. *Madison Beach Hotel, LLC, supra,* 197 Conn. App. 335 n.13; in that both cases involve whether the owner of a nonconforming property has the same right as any other taxpaying citizen who files the appropriate application to utilize land for a permitted use. The plaintiffs' attempt to distinguish *Thomas* is unavailing. Specifically, the plaintiffs argue that *Thomas* is inapplicable because it is a "conforming use case" involving a request to undertake a permitted activity on a nonconforming property, whereas the present case involves a request to undertake a prohibited activity—the concert series—on a nonconforming property. (Emphasis omitted.) The plaintiffs' argument is unpersuasive for the simple reason that it assumes the very facts at issue in parts II and III of this opinion, namely, whether the hotel's concert series is a permitted activity in West Wharf Beach Park. For the reasons set forth hereinafter, we conclude that it is.

II

The plaintiffs claim that the concerts are not a permitted activity and that the Appellate Court misapplied the "actual use" doctrine, an element of the test for determining the existence of a nonconforming use, in concluding that it was. Specifically, the plaintiffs argue that "the Appellate Court wrongly held that these concerts could continue despite no evidence that concerts of any kind had actually occurred on the nonconforming Grassy Strip prior to the zone change, never mind commercial concerts." (Emphasis omitted.) Although the plaintiffs concede that parks in Madison were used for concerts prior to the adoption of the special permit requirement, and continue to be used for them to this day, they argue that the actual use doctrine required the defendants to prove that West Wharf Beach Park was actually used for concerts prior to 1979, which they failed to do.

The defendants respond, inter alia, that the plaintiffs' claim is predicated on a fundamental misunderstanding of the law governing nonconforming uses. Specifically, the defendants argue that, in all of the cases cited in the plaintiffs' appellate brief, the landowners were seeking to use their property in a manner categorically prohibited under the zoning regulations such that the courts were required to identify and delineate the precise scope of the nonconforming use being claimed and that, in the present case, by contrast, parks are not only a permitted use in a residential zone, but the Madison zoning regulations specifically define the type of activities that may occur in them. The defendants maintain that, because concerts clearly fall within the scope of those permitted activities, there was no need for them to "catalogue each of the innumerable ways that the public has recreated in [West Wharf Beach Park] in the past to determine . . . the scope of [the] permissible

uses of the park . . . ." We agree with the defendants.

"[T]he accepted policy of zoning . . . is to prevent the extension of nonconforming uses . . . and that it is the indisputable goal of zoning to reduce nonconforming to conforming uses with all the speed justice will tolerate. . . . Nevertheless, the rule concerning the continuance of a nonconforming use protects the right of a user to continue the same use of the property as it existed before the date of the adoption of the zoning regulations." (Citations omitted; internal quotation marks omitted.) *Helbig* v. *Zoning Commission*, 185 Conn. 294, 306, 440 A.2d 940 (1981). A nonconforming use has been defined as "an 'existing use' the continuance of which is authorized by the zoning regulations." *Melody* v. *Zoning Board of Appeals*, supra, 158 Conn. 519. We previously have held that "[t]o be a nonconforming use the use must be actual. It is not enough that it be a contemplated use [or] that the property was bought for the particular use. The property must be so utilized as to be irrevocably committed to that use." (Internal quotation marks omitted.) *Lebanon* v. *Woods*, 153 Conn. 182, 197, 215 A.2d 112 (1965). "[T]o be irrevocably committed to a particular use, there must have been a significant amount of preliminary or preparatory work done on the property prior to the enactment of the zoning regulations which unequivocally indicates that the property was going to be used for that particular purpose." *Karls* v. *Alexandra Realty Corp.*, 179 Conn. 390, 399, 426 A.2d 784 (1980).

We have also held that, "[f]or a use to be considered nonconforming under . . . Connecticut case law, [the] use must possess two characteristics. First, it must be lawful and second, it must be in existence at the time that the zoning regulation making the use nonconforming was enacted." (Emphasis omitted.) *Helicopter Associates, Inc.* v. *Stamford*, 201 Conn. 700, 712, 519 A.2d 49 (1986). "For there to be an existing use, premises must be so utilized as to be known in the neighborhood as employed for a given purpose. Such utilization combines two factors: (1) the adaptability of the land for the purpose; [and] (2) the employment of it within that purpose. . . . [W]e have unequivocally stated that neither the extent, quantity nor quality of the use is prescribed by the known in the neighborhood test." (Citations omitted; internal quotation marks omitted.) Id., 713. "[T]he party claiming the benefit of a nonconforming use . . . [bears] the burden of proving a valid nonconforming use in order to be entitled to use the property in a manner other than that permitted by the zoning regulations." *Cummings* v. *Tripp*, 204 Conn. 67, 82–83, 527 A.2d 230 (1987).

In the present case, not only are parks a permitted use in a residential zone by special exception; see *Burlington* v. *Jencik*, 168 Conn. 506, 509, 362 A.2d 1338 (1975) (explaining "the distinction among special per-

mits, exceptions and variances" and noting that "[a] variance is authority extended to the owner to use his property in a manner forbidden by the zoning enactment, *while an exception allows him to put his property to a use which the enactment expressly permits* (emphasis added; internal quotation marks omitted)); 9B R. Fuller, supra, § 52:1, p. 220 ("[t]he prohibition of expansion of nonconforming uses applies only to the aspect of the use or structure which is nonconforming"); but the plaintiffs readily concede that West Wharf Beach Park was known in the neighborhood as a park and was utilized as such prior to the enactment of the special permit requirement. The plaintiffs also concede that Madison parks historically were and continue to be used for holding outdoor concerts. Their sole contention is that, even if concerts are a permitted use of Madison parks generally, the actual use component of the nonconforming use test required the defendants to prove that concerts were actually held in West Wharf Beach Park prior to 1979.

As we have explained, however, to establish a valid nonconforming use, the party claiming it need only prove that the land was irrevocably committed to that use prior to the enactment of the zoning regulations. See *Karls* v. *Alexandra Realty Corp.*, supra, 179 Conn. 399. By this, it is merely meant that the party must prove that the claimed nonconformity was not merely contemplated but actually existed when the change in the zoning regulations occurred. See, e.g., *Sherman-Colonial Realty Corp.* v. *Goldsmith*, 155 Conn. 175, 183, 230 A.2d 568 (1967). Applying this principle in *Sherman-Colonial Realty Corp.*, this court concluded that the trial court correctly determined that the plaintiff landowners failed to establish that their land was irrevocably committed to use as a subdivision when "[t]here [was] nothing in the record to indicate that [they] actually used the property or expended any money in physically changing the nature of the undeveloped land [for that purpose] . . . ." Id. This court stated that "[t]he mere filing of maps for the subdivision of a parcel of real estate does not necessarily immunize the subject property from the operative effect of subsequent subdivision regulations. Otherwise, a property owner, by the process of map filing, could completely foreclose a zoning authority from ever taking any action with respect to the land included in the map, regardless of how urgent the need for regulation might be." (Internal quotation marks omitted.) Id.; see also *Corsino* v. *Grover*, 148 Conn. 299, 314, 170 A.2d 267 (1961) ("the filing of a map showing lots in a proposed [subdivision] cannot create a nonconforming use").

Similarly, in *Wallingford* v. *Roberts*, 145 Conn. 682, 146 A.2d 588 (1958), this court concluded that the trial court correctly determined that the defendant landowners had failed to establish that their land, located in a rural district, was actually used as a trailer park prior

to the effective date of the zoning regulations. Id., 684. This court explained that the evidence established that the landowners had purchased the land with full knowledge that trailer parks were not a permitted use in the district under the newly adopted zoning regulations and that, "the day before the regulations were to become effective, the [landowners] caused five trailers to be moved onto the property." Id., 683–84. This court concluded that the trial court had correctly determined that "the belated effort of the [landowners] in moving the five trailers onto their land, within twenty-four hours of the time when the regulations were to become operative, did not create an existing nonconforming use." Id., 684; see also *Wing* v. *Zoning Board of Appeals*, 61 Conn. App. 639, 645, 767 A.2d 131 (keeping horses on residential property was not valid nonconforming use when "[t]here [was] no indication in the record that horses were ever kept on the . . . property prior to [the effective date of the relevant zoning regulations] . . . [and a] horse was specifically brought onto the property in an attempt to create a nonconforming use"), cert. denied, 256 Conn. 908, 772 A.2d 602 (2001).

As the Appellate Court concluded, however, there is simply no question that West Wharf Beach Park was irrevocably and indisputably committed to its use as a park long before the enactment of the special exception requirement. See *Pfister* v. *Madison Beach Hotel, LLC*, supra, 197 Conn. App. 342–43. We further agree with that court that the hotel's use of the park to host a free public concert series is well within the bounds of the park's permitted uses as defined in the Madison zoning regulations. See id., 343; see also *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 237, 662 A.2d 1179 (1995) ("because the [zoning] commission enacted a ninety foot height limitation, [the defendant's nonconforming] use of [a] landfill to that height is expressly permitted by the . . . zoning regulations").

In arguing to the contrary, the plaintiffs cite several cases that they contend "[define] actual use on a granular level, not via broad-brush analysis of what could have been (but never was) done before." All of the cited cases, however, primarily involve whether a nonconforming use has been *expanded*, not whether it existed in the first instance.[19] Such a determination requires application of the criteria set forth in *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 332. To the extent that the *Zachs* analysis strikes the plaintiffs as granular, this undoubtedly is because it requires consideration of a wide cross section of factors, including "(1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." Id. Notably, the plaintiffs have not requested that such an analysis be performed with

respect to West Wharf Beach Park and the concert series.

We note, finally, that the granularity of any actual use analysis necessarily depends on the nature and scope of the use being claimed. If the preexisting use were an amusement park, for example, it is the amusement park and all that an amusement park entails that would be grandfathered into the zoning scheme. In such a case, the court would not be required to inventory the buildings, amusement rides, and entertainment offerings in determining whether the use exists. Similarly here, then, because West Wharf Beach Park was grandfathered into the zoning scheme as a park, a citizen wanting to use the park is not required to prove that any park activity within the realm of possibility that is commonly known to take place in parks occurred in *this park* prior to the enactment of the zoning regulations. "[I]n defining the words 'existing use,' [what] we mean [is] a utilization of the property so that it may be known in the neighborhood as being employed for a given purpose; that neither the extent nor the quantity nor the quality of the use which may be permitted to continue is prescribed by those words; and that it is only required that the use must have existed. *The court is not generally required to speculate as to the number of acts or business transactions necessary to constitute an existing use.*" (Emphasis added.) *Melody* v. *Zoning Board of Appeals*, supra, 158 Conn. 520–21. To the extent that a town or neighboring landowner contends that a particular activity on the property is not within the scope of the original nonconforming use because the activity is inconsistent with the nature and purpose of such use, the burden is on the town or landowner to prove that an illegal expansion of the nonconformity has occurred, which is done through application of the *Zachs* factors.[20] See *Cummings* v. *Tripp*, supra, 204 Conn. 95 ("plaintiffs bore the burden of establishing that the defendants' activities amounted to an illegal extension of a nonconforming use"). As we have explained, the plaintiffs have failed to do so.

To summarize, the right asserted by the hotel was the right to use West Wharf Beach Park as a park within the meaning of the Madison zoning regulations. For the reasons previously set forth, we conclude that the Appellate Court correctly determined that West Wharf Beach Park was irrevocably and actually committed to its use as a park prior to 1979 and that the permissible uses of the park necessarily include all of the permitted active and passive recreational uses of a park under the Madison zoning regulations, including a free summer concert series.

### III

We turn, then, to the plaintiffs' claim that the Appellate Court incorrectly concluded that the Madison zoning regulation that limits the use of a park to all passive

and active recreational purposes allows the concerts at issue in this appeal. See footnote 7 of this opinion. The plaintiffs contend that the trial court unequivocally found that, although the concerts may be free to the public, they are commercial activities from the perspective of the hotel, and, as such, they are not a permitted recreational use of West Wharf Beach Park. The plaintiffs maintain that the dictionary definition of the word "recreational" supports the trial court's interpretation of the zoning regulations and, by extension, its finding that the concerts are not recreational in nature and, therefore, are not permitted in West Wharf Beach Park.

The defendants respond that the plaintiffs' argument fails on a number of fronts, including that the Madison zoning regulations make no distinction between commercial and noncommercial recreational activities; they simply provide that parks may be used for any recreational purpose, passive or active. The defendants further contend that the plaintiffs' interpretation of the zoning regulations is untenable because it makes the permissibility of a free concert in West Wharf Beach Park turn on the subjective intent or motives of the person or persons hosting the concert, in violation of the principle that zoning may be used to regulate only the use of land, not the user. We agree with the defendants.

The following additional facts and procedural history are relevant to our analysis of this claim. In rejecting the plaintiffs' claims on appeal, the Appellate Court explained that the commercial intent behind the concert series was irrelevant and that the trial court's focus on that issue was misguided: "The fact that the hotel stands to benefit, financially or otherwise, from the concerts held on the Grassy Strip has no bearing on the legal determination regarding the permissible uses of the Grassy Strip by a Madison citizen under the zoning regulations. The [trial] court states in its memorandum of decision that, '[w]ith each concert . . . the hotel . . . generates goodwill, and draws to its doorstep hundreds of potential future customers for the hotel's lodging, banquet, and other services. Whatever other interests may be served by the concert series (promoting town spirit, supporting arts and entertainment, and so forth), the event is plainly a commercial activity, which generates direct and indirect economic benefits for the hotel as a business enterprise.' . . .

"The [trial] court additionally states, albeit in dict[um], that the commercial nature of the concerts creates an illegal nonconformity on the Grassy Strip. Notably, there is no prohibition of commercial events on town property codified anywhere in the Madison zoning regulations.[21] The [trial] court's determination, however, is not rooted in the permissible uses of a town owned park under the zoning regulations; rather, the court explains that, even if other Madison citizens

would be permitted to hold a musical performance on the Grassy Strip, the hotel cannot do so 'in a manner that temporarily annexes the town's property to extend [its own] (nonconforming) commercial activities using the town's land.' The [trial] court's emphasis on the commercial nature of the defendants' events, however, serves only to prevent a specific citizen, the hotel, from using a town owned space in a manner available to other citizens." (Footnote in original; footnote omitted.) *Pfister* v. *Madison Beach Hotel, LLC*, supra, 197 Conn. App. 339–341. The Appellate Court further observed that "the [trial] court's assertion that the hotel's use of the Grassy Strip violates the nonconforming use *of the park* [separate and apart from its nonconforming use of the hotel property] is only discussed briefly in [a footnote at the end of] the memorandum of decision. The [trial] court [states]: 'Due to the commercial nature of the concerts as they are produced by the hotel, this activity also violates the Madison zoning regulations applicable to West Wharf [Beach] Park, because commercial activities of this nature are not a permitted use in [a residential] zone, park or no park.' " (Emphasis in original.) Id., 340 n.16. The Appellate Court concluded that, because this statement by the trial court was "not supported by any case law, regulation, or legal analysis," it was "mere dictum." Id.

On appeal, the plaintiffs argue that the trial court's statement was not dictum and that the Appellate Court erred in failing to conclude that it constituted a separate and independent basis for sustaining the trial court's legal determination that the concert series violated the prohibition against the expansion of nonconforming uses contained in § 12.3 of the Madison Zoning Regulations, albeit as applied to the park rather than the hotel property. We are not persuaded.

We agree fully with the Appellate Court's analysis of this issue. We would only add that, even if a single sentence in a footnote at the end of the trial court's forty-four page memorandum of decision, addressing an entirely new question pertaining to the lawful uses of the park, reasonably could be construed as more than dictum, the analysis contained therein is untenable, as it would make the permissibility of hosting a free concert in West Wharf Beach Park turn on the subjective intent of the host, in clear violation of "[t]he basic zoning principle that zoning regulations must directly affect land, not the owners of land . . . ." (Citation omitted; internal quotation marks omitted.) *Reid* v. *Zoning Board of Appeals*, supra, 235 Conn. 857; see also id. ("the identity of a particular user of land is irrelevant to zoning" (internal quotation marks omitted)); id. ("zoning power may only be used to regulate the use, not the user of the land" (internal quotation marks omitted), quoting T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 88; *Dinan* v. *Board of Zoning Appeals*, 220 Conn. 61, 66–67 n.4, 595 A.2d 864 (1991)

(identity of particular user of land is irrelevant to zoning). Not only would this standard require that courts become mind readers, but it would also likely spell the end of many free recreational activities across the state, such as yoga in the park, if the individual or group sponsoring the event did so in the hope of generating good will and attracting new clients to their brick and mortar studios, classrooms, or businesses. The Appellate Court concluded, and we agree, that such a standard is not compelled by any reasonable construction of the Madison zoning regulations or case law.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* January 5, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Schutt Realty, LLC, was a named plaintiff in this action but subsequently withdrew its claims. We therefore refer in this opinion to Pfister, Carbajal, Spence, Emile J. Geisenheimer, Susan F. Geisenheimer, Platt, Crowley, and 33 MBW, LLC, as the plaintiffs.

[2] The town of Madison also was named as a defendant in this action, but the trial court dismissed the plaintiffs' claims against it for failure to exhaust administrative remedies. The plaintiffs did not appeal that ruling to the Appellate Court, and, as a result, the town of Madison did not participate in that appeal and is not a participant in this appeal. We therefore refer in this opinion to Madison Beach Hotel, LLC, and Madison Beach Hotel of Florida, LLC, as the defendants and individually by name when appropriate.

[3] "An R-5 district is a residential zoning district established by the Madison zoning regulations. The purpose of all residential zoning districts, according to the zoning regulations, is to 'set aside and protect areas to be used primarily for single family dwellings. It is intended that all uses permitted [in residential districts] be compatible with single family development . . . .' Madison Zoning Regs., § 3.1." *Pfister* v. *Madison Beach Hotel, LLC*, 197 Conn. App. 326, 329 n.2, 232 A.3d 52 (2020).

[4] "Under the Madison zoning regulations, a nonconforming use is defined as 'a [u]se of land, [b]uilding or [p]remises which is not a [u]se permitted by these [r]egulations for the district in which such land, [b]uilding or [p]remises is situated." Madison Zoning Regs., § 19. The zoning regulations also specify that '[a]ny non-conforming use or building lawfully existing at the time of the adoption of these regulations . . . may be continued . . . subject to the following regulations . . . [n]o non-conforming use shall be extended or expanded.' Id., §§ 12 and 12.3." *Pfister* v. *Madison Beach Hotel, LLC*, 197 Conn. App. 326, 329 n.3, 232 A.3d 52 (2020).

[5] "The variance certificate states in relevant part: 'The proposal would provide zoning-related benefits in that it would reduce nonconformities relating to coverage and to setbacks . . . reduce the number of hotel guest rooms and restaurant/lounge/bar seats, and remove unauthorized encroachments onto [t]own property. . . . Approval of the proposal as presented, and as modified by the conditions established herein, would provide a comprehensive means to defining and controlling the existing commercial use in a residential neighborhood.' " *Pfister* v. *Madison Beach Hotel, LLC*, 197 Conn. App. 326, 330 n.4, 232 A.3d 52 (2020).

[6] Section 4.1 of the Madison Zoning Regulations provides in relevant part: "Special [e]xception uses are those permitted by regulations as appropriate, harmonious, and desirable within a district so long as certain criteria are met. . . ."

[7] "The Madison zoning regulations define a park as 'a tract of land reserved for active or passive recreational purposes and open to the public.' Madison Zoning Regs., § 19.

"The Beach and Recreation Commission is in charge of issuing permits for use of the town owned West Wharf Beach Park. The Administrative Procedures for the Use of Recreation Facilities states: 'Taxpaying Madison residents and [Madison] business owners (not employees of) are eligible to utilize the [town's recreation facilities, of which West Wharf Beach Park is one]. Permission for the use of all Beach and Recreation Department facilities must be obtained from the [b]each and [r]ecreation [d]irector . . . . All requests are to be submitted in writing on a 'Facility Request Form' with

a live signature . . . by a Madison resident.' Rental fees and deposits are also required." *Pfister* v. *Madison Beach Hotel, LLC*, supra, 197 Conn. App. 331 n.6.

[8] "In its memorandum of decision, the [trial] court found that '[t]he show-mobile is a long rectangular trailer with retractable panels. It can be transformed hydraulically into an attractive, functional, open sided stage. The showmobile used by the hotel for the . . . [c]oncert [s]eries was purchased by the town in 2015. The hotel pays the town a rental fee for use of the showmobile on concert nights.' " *Pfister* v. *Madison Beach Hotel, LLC*, supra, 197 Conn. App. 331 n.7.

[9] "Section 12.3 of the Madison [Z]oning [R]egulations provides that '[n]o nonconforming use shall be extended or expanded.' " *Pfister* v. *Madison Beach Hotel, LLC*, supra, 197 Conn. App. 332 n.8.

[10] The trial court denied all other injunctive relief sought by the plaintiffs and dismissed the plaintiffs' claim for a declaratory judgment as to the enforceability of the variance with respect to certain hotel operations and functions.

[11] "The defendants [also claimed] that the [trial] court's permanent injunction prohibiting them from organizing, producing, promoting, or sponsoring the concert series constitute[d] a violation of their rights under the first and fourteenth amendments to the United States constitution." *Pfister* v. *Madison Beach Hotel, LLC*, supra, 197 Conn. App. 333 n.12. Because the Appellate Court was able to resolve the appeal on the basis of the Madison zoning regulations and general principles of land use law, it declined to reach the merits of this claim. Id. On appeal to this court, the defendants renew their constitutional claim as an alternative basis for affirming the Appellate Court's judgment. Because we too resolve this appeal on the basis of the Madison zoning regulations and land use principles, we need not, and therefore do not, address this claim.

[12] "From June 13, 2012, to June 13, 2013, the defendants had a reciprocal license agreement with the town during which time the town licensed the Grassy Strip . . . to the hotel. Throughout the trial court proceedings in this case, this agreement was referred to as a lease. The agreement, however, functioned as a license and did not convey actual ownership of the Grassy Strip to the hotel. [A] license in real property is a mere privilege to act on the land of another, which does not produce an interest in the property. . . . [It] does not convey a possessory interest in land . . . . *Murphy, Inc.* v. *Remodeling, Etc., Inc.*, 62 Conn. App. 517, 522, 772 A.2d 154, cert. denied, 256 Conn. 916, 773 A.2d 945 (2001). The agreement between the hotel and the town was for a term of one year and did not terminate the town's ongoing ownership of the Grassy Strip. In fact, the agreement itself expressly stated that the town retained ownership in the land and merely granted exclusive rights of use to the hotel for a set term. The agreement terminated in 2013 [before the commencement of this action] and, accordingly, is no longer operative." (Internal quotation marks omitted.) *Pfister* v. *Madison Beach Hotel, LLC*, supra, 197 Conn. App. 338 n.14.

[13] In part III of this opinion, we consider and reject the plaintiffs' contention that the trial court's finding that the commercial nature of the concert series violated the Madison zoning regulations applicable to West Wharf Beach Park is an independent basis for sustaining the trial court's decision to grant the permanent injunction and that the Appellate Court incorrectly concluded that the trial court's analysis in this respect was mere dictum not supported by any case law, regulation, or legal analysis. See *Pfister* v. *Madison Beach Hotel, LLC*, supra, 197 Conn. App. 340 n.16.

[14] In *Zachs*, this court held that, in deciding whether an activity illegally expands the scope of a nonconforming use, consideration should be given to three factors: "(1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 332.

[15] "We have previously held that a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use. *Helicopter Associates, Inc.* v. *Stamford*, 201 Conn. 700, 716, 519 A.2d 49 (1986); *Guilford* v. *Landon*, 146 Conn. 178, 183, 148 A.2d 551 (1959). There must be a change in the character of the existing use in order to bring it within the prohibition of the zoning ordinance." (Internal quotation marks omitted.) *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 331.

[16] As previously indicated; see footnote 12 of this opinion; the town licensed the Grassy Strip to the hotel from June 13, 2012, to June 13, 2013.

The concerts at issue in this appeal, however, were held pursuant to a town issued permit allowing the hotel to utilize the park for a specified number of hours on the day of the concerts in accordance with all rules and regulations applicable to such use.

[17] In *Crabtree Realty Co.*, the court cited *Hyatt* v. *Zoning Board of Appeals*, 163 Conn. 379, 383–84, 311 A.2d 77 (1972), and *Raffaele* v. *Planning & Zoning Board of Appeals*, 157 Conn. 454, 457, 462, 254 A.2d 868 (1969), as support for its conclusion that the planning and zoning commission properly had determined that the addition of the adjacent parcel to the dealership property constituted an illegal expansion of the dealership's nonconforming use of the dealership property. See *Crabtree Realty Co.* v. *Planning & Zoning Commission*, supra, 82 Conn. App. 564–66. Both of those cases, however, unlike the present case, involved an actual physical enlargement of the aspect of the use or structure that was nonconforming. Specifically, in *Hyatt*, a nonconforming grocery store sought to construct an entirely new store on its property to be used in addition to the existing nonconforming store. See *Hyatt* v. *Zoning Board of Appeals*, supra, 381. In *Raffaele*, a nonconforming country club sought to extend an existing nonconforming parking lot "by constructing retaining walls of rock in what is now Long Island Sound and filling behind such retaining walls"; (internal quotation marks omitted) *Raffaele* v. *Planning & Zoning Board of Appeals*, supra, 456; so that "the land reclaimed by filling behind the proposed retaining walls would enlarge and become a part of the club's land . . . ." Id., 457. Suffice it to say that these cases bear no resemblance to the present case and do not support the trial court's conclusion that the Grassy Strip could be treated as hotel property for purposes of its nonconforming use analysis.

[18] See *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 331 (whether nonconforming use has been illegally expanded is question of fact for fact finder); id. ("[w]e have previously held that a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use" (internal quotation marks omitted)).

[19] See, e.g., *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 236 (whether vertical expansion of nonconforming landfill was permissible intensification or illegal expansion of landfill's nonconforming use); *Helicopter Associates, Inc.* v. *Stamford*, supra, 201 Conn. 716–18 (whether using heliport for unlimited number of flights illegally expanded heliport's preexisting, nonconforming use); *DeFelice* v. *Zoning Board of Appeals*, 130 Conn. 156, 158, 32 A.2d 635 (1943) ("whether the erection and utilization of [a] wet sand classifier would amount to an extension of [the nonconforming] use"); *Woodbury Donuts, LLC* v. *Zoning Board of Appeals*, 139 Conn. App. 748, 754, 57 A.3d 810 (2012) (whether year-round use of nonconforming seasonal restaurant constituted illegal expansion of nonconforming use).

[20] The plaintiffs cite *Wing* for the proposition that, "although the defendants seek a broader framing of actual use, existing law is that the granular framing controls" because, in that case, the fact that the property was used for some livestock prior to the enactment of the new zoning regulations "did not open the door to any and all livestock after." The plaintiffs misunderstand the analysis employed in *Wing*, which clearly supports the analysis employed herein. In *Wing*, the landowners claimed a preexisting right to keep a horse on one tenth of an acre of nonwetlands property when the zoning regulations required three acres of such property per horse. *Wing* v. *Zoning Board of Appeals*, supra, 61 Conn. App. 641 n.2, 642–43. The Appellate Court held that the trial court properly had determined that no such right existed because there was no evidence that a horse had ever been kept on the property prior to the date the zoning regulations took effect. Id., 645–46. Because they could not establish an actual prior use of horses on the property, the landowners claimed that horses were a permissible extension of their preexisting nonconforming right to keep a sheep and a pygmy goat on the property. Id., 646–47. Applying a *Zachs* analysis, the Appellate Court rejected the landowners' claim, stating that they were "not merely seeking an intensification of a legal nonconforming use, but a change in the character of the use. . . . [T]he animals that were deemed legal nonconforming uses can be kept on the [landowners'] property. The addition of other kinds of large animals, including the horses, constitutes an unlawful extension of the prior use." (Citation omitted.) Id., 647. As we indicated, however, the plaintiffs in the present case do not claim that the concert series constitutes an unlawful extension of West Wharf Beach Park's preexisting, nonconforming use *as a park* under *Zachs*, undoubtedly because concerts fall comfortably within the permitted uses of a park set forth in the Madison zoning regulations. Knowing that such a claim would be unavailing, and

having failed to convince us that the trial court properly treated the park as hotel property for purposes of determining whether the concerts violated the hotel's nonconforming use of the hotel property, the plaintiffs now argue that the defendants, as part of their burden, were required to prove that concerts actually occurred in West Wharf Beach Park prior to the enactment of the special exception requirement in order for concerts to have been grandfathered into that requirement. For the reasons previously discussed, however, we are not persuaded by this argument.

[21] "Within the Madison Administrative Procedures for the Use of Recreational Facilities, which are not a part of the zoning regulations, it states that 'Madison facilities cannot be used for individual or corporate personal enterprise where admission fees are charged or where selling a product/service is the purpose of the gathering [(i.e., investment seminars)] . . . .' . . . As the undisputed record reflects, no admission fees were charged for entry to the concerts, and the defendants' stated purpose for the concert series was to provide a form of free recreational entertainment to the public on the Grassy Strip." (Emphasis omitted.) *Pfister* v. *Madison Beach Hotel, LLC*, supra, 197 Conn. App. 340 n.17.

---